## R.C. EQUITY GROUP, LLC *v.* ZONING COMMISSION OF THE BOROUGH OF NEWTOWN
### (SC 17676)

Rogers, C. J., and Borden, Norcott, Katz, Palmer, Vertefeuille and Zarella, Js.*

---

*The listing of justices reflects their seniority status as of the date of oral argument.

This case originally was argued before a panel of this court consisting of Justices Norcott, Katz, Palmer, Vertefeuille and Zarella. Thereafter, the court, pursuant to Practice Book § 70-7 (b), sua sponte, ordered that the case be considered en banc. Accordingly, Chief Justice Rogers and Justice Borden were added to the panel, and they have read the record, briefs and transcript of oral argument.

Argued April 9, 2007—officially released January 22, 2008

*Robert H. Hall,* for the appellant (plaintiff).

*Donald A. Mitchell,* for the appellee (defendant).

*Opinion*

PALMER, J. The plaintiff, R.C. Equity Group, LLC, appeals from the judgment of the trial court dismissing its zoning appeal from the decision of the defendant, the zoning commission of the borough of Newtown. The trial court dismissed the plaintiff's appeal for lack of subject matter jurisdiction because the plaintiff had failed to make service of process on the borough clerk within fifteen days from the published notice of the decision in accordance with General Statutes § 8-8 (b)[1]

---

[1] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board . . . may take an appeal to the superior court for the judicial district in which the municipality is located. The appeal shall be commenced by service of process in accordance with subsections (f) and (g) of this section within fifteen days from the date that notice of the decision was published as required by the general statutes. . . ."

and (f) (2).[2] The plaintiff claims that the trial court incorrectly concluded that the failure of service was not subject to the savings provision of General Statutes § 8-8 (q),[3] which provides, inter alia, for the refiling of a zoning appeal that has been dismissed for defective service stemming from the "default or neglect" of the marshal. Although the plaintiff concedes both that the citation in the summons did not name the borough clerk and that the marshal effected service in accordance with the citation, the plaintiff nevertheless maintains that the service defect was due to the default or neglect of the marshal because it was the duty of the marshal, not the plaintiff or its attorney, to ensure that service

---

[2] General Statutes § 8-8 (f) provides: "Service of legal process for an appeal under this section shall be directed to a proper officer and shall be made as follows:

"(1) For any appeal taken before October 1, 2004, process shall be served by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and by leaving a true and attested copy with the clerk of the municipality. Service on the chairman or clerk of the board and on the clerk of the municipality shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the chairman or clerk of the board or the clerk of the municipality a necessary party to the appeal.

"(2) For any appeal taken on or after October 1, 2004, process shall be served in accordance with subdivision (5) of subsection (b) of section 52-57. Such service shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the clerk of the municipality or the chairman or clerk of the board a necessary party to the appeal."

General Statutes § 52-57 (b) provides in relevant part: "Process in civil actions against the following-described classes of defendants shall be served as follows . . . (5) against a board, commission, department or agency of a town, city or borough, notwithstanding any provision of law, upon the clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second copy to the board, commission, department or agency . . . ."

[3] General Statutes § 8-8 (q) provides: "If any appeal has failed to be heard on its merits because of insufficient service or return of the legal process due to unavoidable accident or the default or neglect of the officer to whom it was committed, or the appeal has been otherwise avoided for any matter of form, the appellant shall be allowed an additional fifteen days from determination of that defect to properly take the appeal. The provisions of section 52-592 shall not apply to appeals taken under this section."

was made in accordance with the provisions of § 8-8 (f) (2). We reject the plaintiff's claim and, therefore, affirm the judgment of the trial court.[4]

The following undisputed facts and procedural history are relevant to our disposition of this appeal. The borough of Newtown (borough) is a specially chartered municipality located within the town of Newtown. The defendant is the borough's zoning commission. In May, 2003, the defendant adopted zoning regulations governing a village district area pursuant to General Statutes § 8-2j, and amended its other related regulations. One of the new regulations limited the maximum size of a "discrete building structure," an undefined term, to 6500 square feet. The defendant subsequently repealed and readopted these regulations in December, 2003, and again in March, 2005. The readopted regulations were identical in all material respects to the regulations adopted in May, 2003.

The plaintiff owns approximately twelve acres of land located in the borough. The property is improved with a building that contains 16,947 square feet of gross leasable area that presently is leased to a tenant for office purposes, and is capable of expansion through the addition of a partial second floor. The property itself is also large enough to permit the addition of one or more buildings in excess of 6500 square feet. The plaintiff filed a zoning appeal from the defendant's March, 2005 decision to readopt the restrictive village district regulations, claiming that the defendant had acted illegally, arbitrarily and capriciously when it adopted the

---

[4] The defendant also asserts that this action is moot for reasons relating to the repeal and readoption of the regulations that provide the basis for the plaintiff's claim against the defendant. In light of our conclusion that the court lacks subject matter jurisdiction due to inadequate service of process, we do not address the defendant's mootness claim.

regulations because their terms violated several constitutional and statutory provisions.[5]

The plaintiff employed Robert B. Gyle III, a state marshal, to serve process in connection with the zoning appeal. On March 24, 2005, Gyle went to the office of the plaintiff's attorney, Robert H. Hall, to pick up the process. Hall was not present when Gyle arrived but had left one copy of the process with Hall's secretary. The process, a form JD-CV-1 summons with the appeal attached, identified the defendant as the "[z]oning [c]ommission of the [b]orough of Newtown, c/o Linda Shepard, Chairman," with Shepard's home address following immediately thereafter. That same day, Gyle personally served Shepard at her home. Although the form JD-CV-1 summons contained a generic citation directing the marshal to make service,[6] the form that Hall signed and provided to Gyle for service in the present case contained no instruction directing Gyle to serve the borough clerk as § 8-8 (f) (2) requires.[7] Although Gyle served Shepard, he did not serve the borough clerk.

[5] Specifically, the plaintiff claimed that (1) the village district created in the regulations was not properly identified either in the plan of conservation and development adopted after October 1, 2000, or in an earlier plan, (2) the village district was not properly coterminous with the center area created in the plan, (3) the restriction of "discrete building structure[s]" to 6500 square feet had no rational relationship to general or special zoning purposes under either § 8-2j or General Statutes § 8-2, (4) the restriction was an unconstitutional taking under the federal and state constitutions, and (5) the regulations, as adopted, were impermissibly vague under the federal and state constitutions.

[6] The form JD-CV-1 summons contains the following language near the top of the form: "TO: Any proper officer; BY AUTHORITY OF THE STATE OF CONNECTICUT, you are hereby commanded to make due and legal service of this Summons and attached Complaint." Following that language is a box with several blank lines on which the names and addresses of the parties are to be printed.

[7] Because the plaintiff filed its zoning appeal after October 1, 2004, § 8-8 (f) (2) required it to serve two copies of the process on the borough clerk. See General Statutes § 52-57 (b) (5); see also footnote 2 of this opinion.

Thereafter, on August 22, 2005, the trial court, *J. R. Downey, J.*, granted the defendant's motion to dismiss the plaintiff's zoning appeal on the basis of the plaintiff's failure to serve the borough clerk. The plaintiff commenced the present zoning appeal on September 2, 2005, in reliance on the savings provisions of § 8-8 (q), and Gyle properly served two copies of the summons and appeal on the borough clerk.[8] The defendant again filed a motion to dismiss the present appeal, claiming that § 8-8 (q) did not save the action because the initial failure of service was not attributable to the default or neglect of Gyle but, rather, to Hall, for preparing a summons identifying the defendant's chairperson, and not the borough clerk, as the defendant's statutory agent for service.

The plaintiff filed a memorandum of law in opposition to the defendant's motion to dismiss. Attached as exhibits to the memorandum of law were the form JD-CV-1 summonses that Hall had used in both zoning appeals,[9] along with the returns of service that Gyle had filed in connection with his service of process in those appeals. In each of those appeals, Hall had identified the defendant as the "[z]oning [c]ommission of the [b]orough of Newtown, c/o Linda Shepard, Chairman," followed by Shepard's home address. The summons forms that Hall had completed in connection with both zoning appeals contained no instruction to Gyle to serve the borough clerk. In contrast to the present zoning appeal and the

---

[8] There is no dispute that the plaintiff timely refiled its zoning appeal under § 8-8 (q).

[9] We note that the plaintiff had brought a previous zoning appeal in 2003 that is not the subject of this appeal. In referring to "both" appeals, we are merely differentiating between the March, 2005 zoning appeal that the court, *J. R. Downey, J.*, dismissed, and the plaintiff's subsequent appeal in September, 2005, in which the plaintiff attempted to save, in reliance on the provisions of § 8-8 (q), the prior zoning appeal that *J. R. Downey, J.*, had dismissed.

The form JD-CV-1 summons that Hall had used in both zoning appeals were identical in all material respects.

zoning appeal that the plaintiff commenced in March, 2005, however, the plaintiff had served Shepard *and* the borough clerk in a zoning appeal brought in 2003 to challenge the defendant's December, 2003 decision to adopt certain regulations. See footnote 9 of this opinion.

The plaintiff also provided the court with an affidavit attested to by Gyle. In his affidavit, Gÿle stated that prior to serving process in the plaintiff's zoning appeals, he was "aware that the legal requirements for service of process in zoning appeals had been changed effective October 1, 2004,[10] so that instead of serving one copy on the [c]hairman or [c]lerk [of the zoning commission] and another copy on the [c]lerk of the [b]orough, two copies were required to be served [on] the [c]lerk of the [b]orough and [that] it was no longer necessary to serve the [c]hairman or [c]lerk of the zoning entity involved." Gyle also stated, however, that he "did not think about the requirement for service" when he picked up the process from Hall's office and served it on Shepard rather than on the borough clerk. Gyle further stated that he should have remembered to serve the borough clerk, as he had in the past, and that he had "no excuse for failing to serve the appeal in accordance with the requirements of the [s]tatute . . . ."

The trial court, *Schuman, J.*,[11] granted the defendant's motion to dismiss. In its memorandum of decision, the court, after observing that the process that Gyle originally received from Hall and served on Shepard did not identify the borough clerk as a person to be served, explained that it is the duty of the plaintiff, rather than the marshal, to identify who must be served. The trial court further explained that when, as in the present case, the process fails to identify the proper

---

[10] See footnote 7 of this opinion.

[11] Hereinafter, all references to the trial court are to the court, *Schuman, J.*, unless otherwise noted.

person to be served, the failure of service is attributable to the plaintiff as a matter of law, and cannot be ascribed to the default or neglect of the marshal under § 8-8 (f).[12] Accordingly, the trial court rendered judgment dismissing the plaintiff's zoning appeal. The Appellate Court subsequently granted the plaintiff's petition for certification to appeal, and we transferred the appeal to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-1.

On appeal, the plaintiff claims that, contrary to the conclusion of the trial court, it is solely the duty of the marshal "to determine how to make proper service," and, therefore, Gyle's "failure to make proper service in this case is 'default or neglect' as a matter of law." Consistent with this contention, the plaintiff asserts that it had no legal obligation to direct—or even to assist—Gyle in accomplishing that task. Finally, the plaintiff maintains that the record is abundantly clear that, although the summons identified the wrong person, namely, Shepard, as the defendant's agent for service of process, Gyle nevertheless knew better, and, therefore, Hall's error in naming Shepard instead of the borough clerk neither relieves Gyle of responsibility for

---

[12] Specifically, the trial court stated: "In the present case . . . the fact that the [marshal] did not serve the municipal clerk is primarily due to the plaintiff's failure to name the clerk in its process. Although the plaintiff had the advantage of using a marshal who was very knowledgeable about the law, when, as [in the present case], the plaintiff fails to provide the marshal with the identity of all persons to serve, ultimately the responsibility must lie with the plaintiff . . . rather than the marshal." The trial court further stated that it is unreasonable "to expect a marshal to interpret the law and identify the correct persons to [serve]. . . . [T]hat role belongs to the plaintiff and ultimately the plaintiff's attorney, who is trained in the law. Determining who to serve can be a difficult task, involving legal research and statutory construction . . . . The court will not hold that the responsibility for performing this difficult task falls on a lay marshal rather than the plaintiff and its trained attorney. Accordingly . . . the defect in service was not due to [the] 'default or neglect of the officer to whom it was committed' under § 8-8 (q)." (Citation omitted.)

inadequate service nor removes the service deficiency from the purview of the savings provisions of § 8-8 (q). We agree with the trial court that, as a matter of law, § 8-8 (q) does not save the plaintiff's zoning appeal.

As a threshold matter, we set forth certain principles that govern our review of the plaintiff's claim. "A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court. . . . A motion to dismiss tests, inter alia, whether, on the face of the record, the court is without jurisdiction. . . . [O]ur review of the court's ultimate legal conclusion and resulting [determination] of the motion to dismiss [is] de novo." (Internal quotation marks omitted.) *Cox* v. *Aiken*, 278 Conn. 204, 210–11, 897 A.2d 71 (2006). Furthermore, whether the trial court properly dismissed the plaintiff's appeal for lack of subject matter jurisdiction turns on whether the marshal's conduct in failing to serve the borough clerk constituted "default or neglect" within the meaning of § 8-8 (q). Because "[t]he interpretation of a statute, as well as its applicability to a given set of facts and circumstances, involves a question of law . . . our review . . . is plenary."[13] (Internal quotation marks omitted.) *Lagassey* v. *State*, 268 Conn. 723, 737, 846 A.2d 831 (2004).

In applying § 8-8 (q) to the facts and circumstances of this case, we do not write on a blank slate. To place that provision in proper context, we summarize our recent analysis of the jurisdictional requirements of § 8-

---

[13] We note that, under General Statutes § 1-2z, "[t]he meaning of a statute shall, in the first instance, be ascertained from the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered." Neither party contends, however, that § 1-2z limits our review of § 8-8 (q).

8, including an examination of the legislative history surrounding the adoption of § 8-8 (q). Specifically, in *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 900 A.2d 1 (2006), we explained that, "[i]n 1989 . . . the legislature amended [General Statutes (Rev. to 1989)] § 8-8 to include the savings provisions of . . . [subsections] (p) and (q). . . . [These provisions] were intended to provide a greater measure of fairness to persons seeking to appeal from the decisions of local zoning commissions and boards of appeal. . . . [T]he legislature amended General Statutes (Rev. to 1989) § 8-8 in 1989 after our decisions in [*Simko* v. *Zoning Board of Appeals*, 205 Conn. 413, 533 A.2d 879 (1987) (*Simko I*), and *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 538 A.2d 202 (1988) (*Simko II*) (affirming *Simko I* on rehearing en banc)][14] . . . because of its concern that an overly strict adherence to the provisions of . . . [subsection] (b) . . . would result in unnecessary unfairness." (Citation omitted; internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, supra, 767–68.

The facts of *Fedus* were identical in all relevant respects to the facts of *Simko*. In each case, the plaintiffs had served the town clerk with a copy of the summons and complaint, as required by statute, but had failed to name the clerk in the citation of the summons. See id., 754; *Simko I*, supra, 205 Conn. 415. In *Simko*, however, we concluded that the failure of the plaintiffs to name the town clerk in the citation constituted a fatal jurisdictional defect that deprived the court of subject matter jurisdiction over the zoning appeal. See *Simko I*, supra, 419, 421. As we explained in *Simko*, our decision in that case rested primarily on our determination that the town clerk was a statutorily mandated necessary party to the appeal, and, therefore, by failing

---

[14] Hereinafter, all references to *Simko* throughout this opinion are to the decisions in *Simko I* and *Simko II*.

to name the clerk in the citation of the appeal, "the sheriff had no authority to command the clerk's appearance for any purpose." Id., 421. Specifically, we stated: "[The] citation is a matter separate and distinct from the sheriff's return and is the important legal fact upon which the judgment rests. . . . [Thus, a] proper citation is essential to the validity of the appeal and the jurisdiction of the court. . . . A citation is not synonymous with notice." Id., 420. "Because of the failure to name the clerk of the municipality in the citation, the sheriff had no authority to command the clerk's appearance for any purpose. Therefore . . . the delivery to the clerk of the papers comprising the appeal was of no legal significance." Id., 421. Thus, we held "that the failure to name a statutorily mandated, necessary party in the citation is a jurisdictional defect which renders the administrative appeal subject to dismissal." Id.

Immediately following the release of our decisions in *Simko*, the legislature amended General Statutes (Rev. to 1987) § 8-8 (b) to provide, inter alia, that "service upon the clerk of the municipality shall be for the purpose of providing additional notice of [the] appeal to [the] board and shall not thereby make such clerk a necessary party to such appeal." Public Acts 1988, No. 88-79, § 1. "By this amendment, the legislature indicated that, contrary to our conclusion in *Simko*, service of the appeal on the town clerk is not for the purpose of making the town clerk a necessary party to the appeal but, rather, to provide the board with additional notice of the appeal." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 763.

The legislature also amended § 8-8 to include the savings provision at issue in the present appeal, which, as we explained in *Fedus*, "signaled the preference of the legislature that zoning appeals, like civil actions, shall be treated with sufficient liberality such that tech-

nical or procedural deficiencies in the appeal do not deprive the court of subject matter jurisdiction over the appeal." Id., 770; see Public Acts 1989, No. 89-356, § 1. These amendments sought to ameliorate the harshness of our holding in *Simko* that a defect in the citation deprives the court of subject matter jurisdiction even though proper service has been made. Thus, we concluded in *Fedus* that, although a failure of service in a zoning appeal *does* implicate the court's subject matter jurisdiction; *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 770 n.17; technical or procedural deficiencies in the appeal, such as a defect in the citation, do not deprive the court of subject matter jurisdiction, as long as proper service nevertheless is effectuated.[15] See id., 768–70.

In the present appeal, the trial court relied on this court's decision in *Gadbois* v. *Planning Commission*, 257 Conn. 604, 778 A.2d 896 (2001), in support of its conclusion that the plaintiff's failure to serve the borough clerk was not a technical defect in form but, rather, a substantive defect in service that could not be cured by the savings provisions of § 8-8 (q). In *Gadbois*, as in the present case, the citation directed the sheriff to serve the chairman of the defendant planning commission but contained no mention of the town clerk. Id., 606–607. Under then applicable law, however, service was required on both the chairperson of the planning commission and the town clerk. Id., 606, citing General

---

[15] The plaintiff maintains that *Fedus* stands for the proposition that "[f]ailure to identify the actual official who is to be served is . . . not needed to establish subject matter jurisdiction [when] the [zoning] board or commission is identified [in the process] and there is a direction to serve that *entity*." (Emphasis added.) The plaintiff misreads *Fedus*. As we have explained, *Fedus* holds that a failure to name the town clerk in the citation of a zoning appeal does not deprive the court of subject matter jurisdiction over the appeal when, as in *Fedus*, actual service nevertheless is made on the proper person. When actual service is made, any defect in the *form* of the citation or summons may be corrected pursuant to § 8-8 (p).

Statutes (Rev. to 2001) § 8-8 (e). The sheriff effectuated service in accordance with the citation and, accordingly, did not serve the town clerk. *Gadbois* v. *Planning Commission,* supra, 606–607. We concluded that the trial court properly had determined that the failure to make service on the town clerk was a "fatal jurisdictional defect" that could not be remedied under § 8-8 (q). Id., 608. Specifically, we explained that § 8-8 (q) did not apply because the defective service was not the result of negligence or error by the sheriff; see id., 609; who had fully discharged his responsibility by serving the summons and complaint in accordance with the citation. We agree with the trial court that *Gadbois* is dispositive of this appeal.

The plaintiff nevertheless maintains that the plaintiff in a zoning appeal has no legal duty to instruct the marshal whom to serve. Specifically, the plaintiff asserts that its only duty is to identify the defendant by name and address in the summons, and, after that, "it is up to the marshal himself to determine how to make proper service."

To the contrary, "it is well established in Connecticut that if a writ appears to be [valid] on its face, appears to have been issued by a competent authority, and has been issued with legal regularity, a [marshal] has a duty to serve it and will be protected in making such service. *Watson* v. *Watson,* 9 Conn. 140, 147 (1832)." *Fair Cadillac Oldsmobile Corp.* v. *Allard,* 41 Conn. App. 659, 662, 677 A.2d 462 (1996). "When we speak of process 'valid on its face,' in considering whether it is sufficient to protect an officer, we do not mean that its validity is to be determined upon the basis of scrutiny by a trained legal mind; nor is it to be judged in the light of facts outside its provisions which the officer may know. . . . Unless there is a clear absence of jurisdiction on the part of the [authority] issuing the process, it is sufficient if upon its face it appears to be valid in the judgment

of an ordinarily intelligent and informed layman. To hold otherwise would mean that an officer must often act at his peril or delay until he has had an opportunity to search out legal niceties of procedure . . . . 'A result subjecting him to constant danger of liability would be an intolerable hardship to him, and inevitably detract from the prompt and efficient performance of his public duty.' " (Citations omitted.) *Aetna Ins. Co.* v. *Blumenthal*, 129 Conn. 545, 553–54, 29 A.2d 751 (1943).

Indeed, under General Statutes § 6-32,[16] a marshal "has a statutory duty to serve and to make prompt return of all process that is given to him [or her] for service"; *Fair Cadillac Oldsmobile Corp.* v. *Allard*, supra, 41 Conn. App. 662; and is subject to double damages for failing to comply with that requirement. General Statutes § 6-32. It would be manifestly unfair to expose a marshal to such liability merely for effecting service in compliance with the dictates of the citation, as Gyle did in the present case, especially because "[t]he law does not require or expect [marshals] to have the education and training" to do anything more. *Fair Cadillac Oldsmobile Corp.* v. *Allard*, supra, 663. In fact, § 6-38b-6 (3) of the Regulations of Connecticut State Agencies expressly precludes marshals from "engag-[ing] in the practice of law or render[ing] legal advice" in the course of performing their duties. Requiring a marshal to exercise independent judgment with respect to the legal sufficiency of a citation arguably would place the marshal in jeopardy of violating that prohibi-

---

[16] General Statutes § 6-32 provides: "Each state marshal shall receive each process directed to such marshal when tendered, execute it promptly and make true return thereof; and shall, without any fee, give receipts when demanded for all civil process delivered to such marshal to be served, specifying the names of the parties, the date of the writ, the time of delivery and the sum or thing in demand. If any state marshal does not duly and promptly execute and return any such process or makes a false or illegal return thereof, such marshal shall be liable to pay double the amount of all damages to the party aggrieved."

tion. Thus, the responsibility for identifying the person or persons to be served with process rightly lies with the plaintiff and the plaintiff's attorney, not with the marshal.

The limited nature of the marshal's legal duty necessarily informs our interpretation of § 8-8 (q) as applied to the facts of the present case. Because a marshal's sole duty is to make service as directed by the citation, the conduct of a marshal who faithfully discharges that responsibility cannot be deemed to constitute "default or neglect" for purposes of § 8-8 (q). The word "default" signifies a "failure to do something required by duty or law," and "neglect" means "to carelessly omit doing (something that should be done) either altogether or almost altogether . . . ."[17] Webster's Third New International Dictionary. Simply put, a marshal who makes service in accordance with the citation has neither failed to do what the law requires nor carelessly omitted to do something that he or she should have done.

Furthermore, the evident purpose of § 8-8 (q) is to avoid the unfairness that otherwise would result from holding a plaintiff responsible for a failure of service that is attributable not to the plaintiff, but to the marshal. In enacting § 8-8 (q), the legislature recognized that neither a plaintiff nor the plaintiff's counsel personally effects service of process; rather, such service is delegated to a third party, a marshal, over whom the plaintiff does not have complete control. The plaintiff—or, as is most often the case, the plaintiff's counsel—is responsible for instructing the marshal whom to serve, but

[17] Because the two words are not defined in the relevant statutory provisions, we turn to General Statutes § 1-1 (a), which provides in relevant part: "In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language . . . ." We look to the dictionary definition of the terms to ascertain their commonly approved meaning. E.g., *Stone-Krete Construction, Inc.* v. *Eder*, 280 Conn. 672, 678, 911 A.2d 300 (2006).

neither can control the actions of the marshal thereafter. Consequently, it is eminently fair and reasonable that, under § 8-8 (q), a plaintiff's right to appeal will not be extinguished merely because the marshal, for reasons not attributable to the plaintiff or the plaintiff's attorney, fails to effectuate service as instructed.

Thus, in *Vitale* v. *Zoning Board of Appeals*, 279 Conn. 672, 904 A.2d 182 (2006), we observed that the plaintiffs in that case could rely on § 8-8 (q) to save their zoning appeal from dismissal due to the marshal's failure to serve both the chairperson of the zoning commission and the town clerk in accordance with the applicable version of § 8-8 (f). Id., 681–82 n.9. In *Vitale*, the process prepared by the plaintiffs' attorney had directed the marshal to serve both the chairperson of the zoning commission and the town clerk, but the marshal, acting on the mistaken belief as to the applicability of a recent amendment to § 8-8 (f), served only the town clerk. See id., 675. Although we concluded that the trial court properly had dismissed the original appeal for lack of proper service; see id., 681; we also concluded that § 8-8 (q) permitted the refiling of the appeal because the defective service was attributable to the default or neglect of the marshal in failing to follow the express command of the citation. See id., 681–82 n.9. We further concluded that because § 8-8 (q) is a remedial statute, it must be construed liberally, and that, so construed, the fifteen day grace period of § 8-8 (q) did not begin to run until this court finally had determined that the original service was insufficient. Id.

We fully agree with the plaintiff in the present action that § 8-8 (q) should be construed liberally to accomplish its remedial purpose. To conclude that Gyle's failure to serve the borough clerk constitutes "default or neglect" within the meaning of § 8-8 (q), however, when Gyle did exactly what he was directed to do, is not to read § 8-8 (q) liberally to achieve its purpose; rather, it

is to assign § 8-8 (q) a meaning that it clearly does not have.[18]

It is true, of course, that if Gyle *had* served the borough clerk notwithstanding the faulty citation, then § 8-8 (q) would have permitted the plaintiff to refile its appeal; by serving the borough clerk, the marshal effectively would have remedied the mistake of the plaintiff's counsel in failing to name the borough clerk in the citation. Indeed, that is precisely what occurred in *Fedus*. See *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 755. Gyle, however, did not serve the borough clerk, and because he had no duty to do so, the insufficient service was not attributable to his default or neglect within the meaning of § 8-8 (q).[19] Consequently,

---

[18] Contrary to the plaintiff's claim, *Kobyluck* v. *Planning & Zoning Commission*, 84 Conn. App. 160, 852 A.2d 826, cert. denied, 271 Conn. 923, 859 A.2d 579 (2004), does not support the proposition that § 8-8 (q) operates to save a zoning appeal that has been dismissed for inadequate service even when the citation does not identify the proper person to be served. In contrast to the present case, the citation in the summons in *Kobyluck* directed the marshal to serve the agents of the defendant planning and zoning commission (commission), namely, the chairperson of the commission and the town clerk, under the then applicable revision of § 8-8. See *Kobyluck* v. *Planning & Zoning Commission*, Court File, Superior Court, judicial district of New London, Docket No. CV-00-0121562-S (May 9, 2000). The marshal, however, served only the town clerk. See *Kobyluck* v. *Planning & Zoning Commission*, supra, 168–69. In its motion to dismiss the appeal, the commission asserted that the marshal's failure to serve its chairperson was attributable to the default and neglect of the plaintiffs, not the marshal, because the plaintiffs had failed to state the chairperson's correct address for service in the citation. See id., 169. The trial court rejected the commission's contention, noting that § 8-8 did not require the plaintiffs to provide the chairperson's address in the citation. Id. The trial court concluded, therefore, and the Appellate Court agreed, that the service defect was attributable to the default or neglect of the marshal, who, despite being directed to make service on the commission chairperson, had failed to perform the simple investigative work necessary to determine the chairperson's readily ascertainable correct address. See id. Thus, in *Kobyluck*, the service defect was caused by the marshal's failure to make a reasonable effort to locate the person identified in the citation, and not by the plaintiffs' failure to identify that person in the citation.

[19] Because the plaintiff does not claim that Hall orally instructed Gyle to serve the borough clerk despite the command of the citation to serve only the chairperson of the zoning commission, we need not decide whether

## the trial court properly granted the defendant's motion to dismiss.[20]

Gyle's failure to follow such an oral instruction would constitute "default or neglect" within the meaning of § 8-8 (q).

[20] We take issue with the dissent for several reasons, both substantive and procedural. First, the dissent decides this case on a legal theory that never has been advanced by the plaintiff, namely, that this court should overrule our holding in *Gadbois* v. *Planning Commission*, supra, 257 Conn. 604. Although the dissent concedes both that the plaintiff cannot prevail under our holding in *Gadbois* and that the plaintiff has not claimed, either in the trial court or in this court, that *Gadbois* should be overruled, the dissent nevertheless concludes that *Gadbois* is no longer good law. We do not share the dissent's willingness to overrule controlling precedent without first affording the parties the opportunity to brief the issue, at least in the absence of a compelling justification to do so. We are not aware of any such reason in the present case.

In fact, the plaintiff's claim is predicated on a different theory altogether, namely, that a marshal has an independent legal duty to effect service correctly, irrespective of the command of the citation. As we have explained, however, this claim is foreclosed by a line of decisions that hold, clearly and emphatically, that a marshal's sole legal duty with respect to the service of process is to effectuate service in accordance with the dictates of the citation.

The dissent would have us construe the words "default or neglect" set forth in § 8-8 (q) in a jurisprudential vacuum, untethered to the guiding legal principles set forth in those decisions and in the regulatory scheme that enumerates the duties and responsibilities of marshals. In other words, the dissent advocates an interpretation of § 8-8 (q) that ignores the common-law and statutory backdrop against which that provision was adopted. We cannot endorse such an interpretation because we presume that the legislature was aware of those standards when it enacted § 8-8 (q). See, e.g., *Hatt* v. *Burlington Coat Factory*, 263 Conn. 279, 310, 819 A.2d 260 (2003) ("the legislature is always presumed to have created a harmonious and consistent body of law" [internal quotation marks omitted]); see also *Considine* v. *Waterbury*, 279 Conn. 830, 844, 905 A.2d 70 (2006) ("the legislature is presumed to be aware of prior judicial decisions involving common-law rules" [internal quotation marks omitted]).

We also reject the dissent's attempt to distinguish our long-standing precedent defining a marshal's duty on the ground that those cases involve a marshal's civil liability, whereas this case involves a statutory savings provision. In addressing the scope of that liability in those cases, this court necessarily defined the parameters of a marshal's legal duty insofar as it pertains to the service of process. The dissent offers no reason, and we are aware of none, why the scope of that duty is any different for purposes of the present case than it was for purposes of those prior cases. Moreover, we are unwilling to adopt an interpretation of § 8-8 (q), as advocated by the dissent, that would require a case-by-case inquiry into the subjective mental state of a marshal who has effected service as directed by the plaintiff's attorney.

The judgment is affirmed.

In this opinion ROGERS, C. J., and BORDEN, KATZ and ZARELLA, Js., concurred.

NORCOTT, J., with whom VERTEFEUILLE, J., joins, dissenting. I disagree with the majority's conclusion that the plaintiff, R.C. Equity Group, LLC, was not entitled to refile this zoning appeal from the decision of the defendant, the zoning commission of the borough of Newtown, under the savings statute, General Statutes § 8-8 (q).[1] In my view, the majority opinion fails to implement the broad construction given to remedial statutes such as § 8-8 (q), as well as the increasingly flexible approach to the law governing the procedure in zoning appeals articulated in this court's recent decision in *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 900 A.2d 1 (2006). Rather, I would conclude that this court's per curiam decision in *Gadbois* v. *Planning Commission*, 257 Conn. 604, 778 A.2d 896 (2001), no longer is good law, and therefore, that the initial failure of service in the present case was attributable to the "default or neglect" of the marshal, Robert B. Gyle III, and not just a legal error by the plaintiff's attorney, Robert H. Hall, because Gyle admittedly knew of, yet

Finally, we strongly disagree with the dissent's assertion that our decision "invites a return to the pre-*Fedus* interpretations of the zoning appeal statutes that were rife with the opportunities for the dismissal of land use appeals on the basis of hypertechnicalities." Our decision does no such thing. Indeed, we reaffirm all that we said in *Fedus* concerning the intent of the legislature to ameliorate the undue harshness of our holding in *Simko* and its progeny. We do not, however, have free reign to overrule our prior interpretation of a statute merely because we might wish to see the statute written differently, or because we might prefer a different result in a particular case.

[1] General Statutes § 8-8 (q) provides: "If any appeal has failed to be heard on its merits because of insufficient service or return of the legal process due to unavoidable accident or the default or neglect of the officer to whom it was committed, or the appeal has been otherwise avoided for any matter of form, the appellant shall be allowed an additional fifteen days from determination of that defect to properly take the appeal. The provisions of section 52-592 shall not apply to appeals taken under this section."

failed to follow, the requirements of § 8-8 (f) (2).[2] I would, therefore, reverse the judgment of the trial court dismissing the plaintiff's zoning appeal. Accordingly, I respectfully dissent.

I

I begin by noting my agreement with the majority's statement of the facts and procedural history of this case, as well as its understanding of the parties' arguments. Before I discuss the majority's erroneous construction and application of § 8-8 (q), I must, however, address the defendant's claim that this case is moot because there is no practical relief available to the plaintiff. I do so because "[m]ootness implicates the court's subject matter jurisdiction and is thus a threshold matter for us to resolve."[3] *Ayala* v. *Smith*, 236 Conn. 89, 93, 671 A.2d 345 (1996). "It is a well-settled general rule that the existence of an actual controversy is an essential requisite to appellate jurisdiction; it is not the

---

[2] General Statutes § 8-8 (f) provides in relevant part: "Service of legal process for an appeal under this section shall be directed to a proper officer and shall be made as follows . . .

"(2) For any appeal taken on or after October 1, 2004, process shall be served in accordance with subdivision (5) of subsection (b) of section 52-57. Such service shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the clerk of the municipality or the chairman or clerk of the board a necessary party to the appeal."

General Statutes § 52-57 (b), which is incorporated by reference in § 8-8 (f), provides in relevant part: "Process in civil actions against the following-described classes of defendants shall be served as follows . . . (5) against a board, commission, department or agency of a town, city or borough, notwithstanding any provision of law, upon the clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second copy to the board, commission, department or agency . . . ."

[3] Despite its failure to raise this claim before the trial court, I review the defendant's mootness arguments because they implicate this court's subject matter jurisdiction. See, e.g., *Peters* v. *Dept. of Social Services*, 273 Conn. 434, 441, 870 A.2d 448 (2005) ("[t]he subject matter jurisdiction requirement may not be waived by any party, and also may be raised by a party, or by the court sua sponte, at any stage of the proceedings, including on appeal").

province of appellate courts to decide moot questions, disconnected from the granting of actual relief or from the determination of which no practical relief can follow. . . . An actual controversy must exist not only at the time the appeal is taken, but also throughout the pendency of the appeal. . . . When, during the pendency of an appeal, events have occurred that preclude an appellate court from granting any practical relief through its disposition of the merits, a case has become moot." (Citations omitted; internal quotation marks omitted.) Id., 93–94.

The mootness issue in the present case is unusual because it does not arise from events occurring subsequent to the filing of the appeal. Rather, the defendant claims that, if the challenged regulations, which were adopted in March, 2005, are declared invalid, they will be replaced by the identical regulations that were adopted in May, 2003,[4] which have not been challenged specifically by the plaintiff in this case.[5] The defendant further contends that any subsequent challenges to the

[4] The general rule is that "[t]he effect of invalidating an agency rule is to reinstate the rule previously in force." *Paulsen* v. *Daniels*, 413 F.3d 999, 1008 (9th Cir. 2005).

[5] I note briefly that another party, Eton Centers, LLC (Eton), but not the plaintiff, challenged the adoption of the May, 2003 regulations. See *Eton Centers, LLC* v. *Zoning Commission*, Superior Court, judicial district of Danbury, Docket No. CV03-0349579S (March 18, 2005). Thereafter, the plaintiff and two other parties, Eton and Pepper Partners, Ltd., each appealed to the trial court from the adoption of the December, 2003 regulations. The four separate appeals were consolidated before the trial court, *Downey, J.*, which upheld the regulations and dismissed the appeal. See *R.C. Equity Group, LLC* v. *Zoning Commission*, Superior Court, judicial district of Danbury, Docket No. CV04-0351155 S (March 18, 2005). Eton did not pursue any further appeals with respect to the adoption of the May, 2003 regulations, but the plaintiff appealed from Judge Downey's decision upholding the validity of the December, 2003 regulations to the Appellate Court. That case, with docket number AC 26716, currently is pending before, and has been stayed by, the Appellate Court. The plaintiff brought the present zoning appeal because it was concerned about potential mootness issues created by the subsequent adoption of the March, 2005 regulations.

May, 2003 regulations are time barred by § 8-8 (r),[6] which means that invalidation of the March, 2005 regulations would not afford the plaintiff any practical relief. Because of the substantive nature of the plaintiff's challenge to the March, 2005 regulations, which are identical in all relevant aspects to the May, 2003 regulations that would replace them, I conclude that practical relief is available to the plaintiff in this zoning appeal.

Both the defendant's brief and my independent research have failed to reveal any case law directly on point that supports the defendant's mootness theory, namely, that no practical relief is available when a successful challenge to a zoning regulation will lead to replacement of the regulation at issue with an identical predecessor provision. In my view, this issue is best resolved by a logical extension of the line of cases addressing the effect of subsequent legislative changes, which hold that "[w]hen the provisions of an original act are repeated in the body of amendments, either in the same or equivalent words, it is considered that the intent of the legislature is that the original law should continue." (Internal quotation marks omitted.) *Downey* v. *Retirement Board*, 22 Conn. App. 172, 178, 576 A.2d 582 (rejecting claim that city charter provision was repealed by implication), cert. denied, 216 Conn. 811, 580 A.2d 56 (1990); see also, e.g., *Chicago* v. *Gordon*, 146 Ill. App. 3d 898, 901, 497 N.E.2d 442 (1986) ("[w]here portions of an ordinance or statute are repeated and retained in the amendatory enactment, or where there

---

[6] Section 8-8 (r) provides a one year statute of limitations for procedural challenges to zoning ordinances or regulations enacted after January 1, 1999. See *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, 98 Conn. App. 213, 224, 907 A.2d 1235 (2006), cert. denied, 281 Conn. 903, 916 A.2d 44 (2007). Section 8-8 (r) applies only to "any case in which a board fails to comply with a requirement of a general or special law, ordinance or regulation governing the content, giving, mailing, publishing, filing or recording of any notice either of a hearing or of an action taken by the board . . . ."

is a simultaneous repeal and reenactment, such an amendatory ordinance or statute will not affect the rights, duties or liabilities accrued under former portions of ordinance which have been reenacted"); *State* v. *Sundling*, 248 Neb. 732, 736, 538 N.W.2d 749 (1995) ("the simultaneous repeal and reenactment of substantially the same statutory provisions is ordinarily construed to be an affirmation or continuation of the original provisions rather than a true repeal"); *Raleigh* v. *Fisher*, 232 N.C. 629, 633, 61 S.E.2d 897 (1950) (zoning ordinance enacted in 1923 remained in effect because 1944 repeal "simultaneously reenacted [it] in substantially the same terms").

My research has revealed two cases wherein courts have applied this rule to conclude that a pending action was not rendered moot by a regulatory or statutory change that did not change the substance of the provision at issue.[7] See *Chicago* v. *Gordon*, supra, 146 Ill. App. 3d 901 (constitutional challenge to ban on outdoor advertising signs or displays in certain residential neighborhoods not moot because "reenactment of the subject

---

[7] It previously had been the law in Connecticut that subsequent regulatory changes mooted pending zoning appeals because "the zoning law or regulation in effect at the time of the decision of a court is controlling as opposed to that in effect when the proceedings were instituted or when the administrative agency entered its decision upon the application." *McCallum* v. *Inland Wetlands Commission*, 196 Conn. 218, 223, 492 A.2d 508 (1985). The legislature superseded the *McCallum* principle with the subsequent enactment of General Statutes § 8-2h (a), which provides: "An application filed with a zoning commission, planning and zoning commission, zoning board of appeals or agency exercising zoning authority of a town, city or borough which is in conformance with the applicable zoning regulations as of the time of filing shall not be required to comply with, nor shall it be disapproved for the reason that it does not comply with, any change in the zoning regulations or the boundaries of zoning districts of such town, city or borough taking effect after the filing of such application." See, e.g., *Protect Hamden/North Haven from Excessive Traffic & Pollution, Inc.* v. *Planning & Zoning Commission*, 220 Conn. 527, 540–41, 600 A.2d 757 (1991). Thus, zoning appeals are considered under the regulations in effect on the date the application is filed. Id., 541.

ordinance did not . . . affect the prosecution for offenses previously committed"); *Goodman* v. *Kennedy*, 459 Pa. 313, 318, 329 A.2d 224 (1974) (repeal and reenactment without substantive change did not render moot declaratory judgment action challenging state's Sunday closing statute); but see *Peterson Outdoor Advertising* v. *Beaufort County*, 291 S.C. 533, 535, 354 S.E.2d 563 (1987) (per curiam) (rejecting this approach because it "would require an appellate court to make a line-by-line, or word-by-word, comparison of the two ordinances and to divert its attention from the merits of the [zoning] appeal").[8] In contrast, cases arising from challenges to the procedure by which a regulation has been adopted, such as compliance with notice requirements, may be rendered moot by a repeal and reenactment in accordance with the correct procedure. See *Real Estate Planners, Inc.* v. *Newmarket*, 134 N.H. 696, 701–702, 597 A.2d 78 (1991) (trial court properly dismissed declaratory judgment action challenging procedure by which town meeting adopted zoning regulations in 1988, after those zoning regulations were repealed and reenacted by validly held meeting in 1990).

In my view, the defendant's mootness claim is best resolved by an inverse application of this rule governing the effect of repealed and simultaneously reenacted statutes and regulations. That is, the defendant's repeal and simultaneous reenactment of the challenged regula-

---

[8] In *Peterson Outdoor Advertising*, the South Carolina Supreme Court rejected an argument that "the repeal and reenactment of the ordinance should not moot the appeal because the provisions of the ordinance which are the subject of this appeal are substantially unchanged." *Peterson Outdoor Advertising* v. *Beaufort County*, supra, 291 S.C. 535. In its per curiam decision, the court reasoned that the necessary comparison process would be time consuming and fraught with "substantial potential for disputes as to whether parallel provisions of the two ordinances have the same meaning." Id. I respectfully disagree with the South Carolina court's analysis because, in my view, it is well within the ability of this court to determine efficiently whether the applicable zoning regulations have been changed in a substantive manner.

tions in December, 2003, and March, 2005, indicates that it intended no substantive change in the original law, which was enacted in May, 2003. This, therefore, saves the case from mootness because the plaintiff's challenge focuses not on the circumstances under which the March, 2005 regulation was enacted, but rather, on their substantive validity under General Statutes §§ 8-2 and 8-2j, as well as the federal and state constitutions.[9] Put differently, a regulation that is invalid under statutory or constitutional law remains equally infirm no matter when it was enacted.[10] Indeed, acceptance of the defendant's mootness argument would mean that a municipality potentially could immunize its zoning regulations from substantive challenge simply by repealing and reenacting them, even without change, on a regular basis. I, therefore, conclude that there is practical relief available to the plaintiff and, thus, this appeal is not moot.

II

Accordingly, I now turn to the principal issue in this appeal, namely, whether Gyle committed "default or neglect" when he failed to serve process in compliance

[9] Specifically, the plaintiff claims: (1) the village district created in the regulations was not properly identified either in a plan of conservation and development adopted after October 1, 2000, or in the 1993 plan; (2) the village district is not properly coterminous with the center area created in the plan; (3) the restriction of " 'discrete building structures' " to 6500 square feet has no rational relationship to general or special zoning purposes under either § 8-2j or § 8-2; (4) the restriction is an unconstitutional taking under the federal and state constitutions; and (5) the regulations, as adopted, are impermissibly vague under the federal and state constitutions.

[10] Accordingly, I disagree with the defendant's reliance on § 8-8 (r), which provides a one year statute of limitations for procedural challenges to zoning ordinances or regulations enacted after January 1, 1999. See *Hayes Family Ltd. Partnership* v. *Planning & Zoning Commission*, supra, 98 Conn. App. 224. By its plain language, § 8-8 (r) applies only to procedural irregularities, and does not rescue a zoning regulation from attacks based on substantive invalidity, which is the focus of the plaintiff's claim in this zoning appeal. See footnote 9 of this dissenting opinion.

with the governing statute, of which he admittedly was aware, thus entitling the plaintiff to refile its appeal pursuant to the savings statute, § 8-8 (q). See footnote 1 of this dissenting opinion. I disagree with the majority's conclusion that, because this case is governed by this court's decision in *Gadbois* v. *Planning Commission*, supra, 257 Conn. 604, the plaintiff is not entitled to invoke § 8-8 (q) because the duties of the marshal and the attorney issuing the summons are distinct, the marshal's duty being limited solely to serving those individuals named in the process itself. Because § 8-8 (q) is a remedial statute that must be read and applied broadly, particularly in light of our recent decision in *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 751, I conclude that *Gadbois* no longer is good law and that the trial court improperly dismissed the plaintiff's zoning appeal.

As a preliminary matter, I note that a motion to dismiss tests the jurisdiction of the trial court, and I agree with the standard of review set forth in the majority opinion, namely, that "because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Nine State Street, LLC* v. *Planning & Zoning Commission*, 270 Conn. 42, 45, 850 A.2d 1032 (2004). Moreover, the principal issue in this appeal, which requires the court to determine the breadth of § 8-8 (q), and specifically whether the service error must be the sole fault of the marshal, "involves a question of statutory interpretation that also requires our plenary review. . . . When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to deter-

mine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission,* supra, 278 Conn. 756.

"The test to determine ambiguity is whether the statute, when read in context, is susceptible to more than one reasonable interpretation." (Internal quotation marks omitted.) *Small* v. *Going Forward, Inc.,* 281 Conn. 417, 422, 915 A.2d 298 (2007). The text of § 8-8 (q) provides in relevant part: "If any appeal has failed to be heard on its merits because of insufficient service or return of the legal process due to . . . *the default or neglect of the officer to whom it was committed,* or the appeal has been otherwise avoided for any matter of form, the appellant shall be allowed an additional fifteen days from determination of that defect to properly take the appeal. . . ." (Emphasis added.) Because the text of § 8-8 (q) is not plain and unambiguous with respect to the type of conduct on the part of the marshal that constitutes the requisite "default or neglect," and also, whether it applies when the plaintiff's attorney has played a significant part in the failure of service, I agree with the majority that our inquiry may be informed by extratextual sources, including the legislative history and our case law.

I agree with the majority that this court "do[es] not write on a blank slate" in its application and construction of § 8-8 (q), because, in my view, the resolution of this appeal turns on the continuing vitality of *Gadbois* v. *Planning Commission*, supra, 257 Conn. 604, a factually similar case, in light of our more recent decision in *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 751. In *Gadbois*, the plaintiffs appealed from the planning commission's approval of a developer's subdivision plan. *Gadbois* v. *Planning Commission*, supra, 606. At that time, § 8-8 required the plaintiffs to commence the appeal by serving process upon " 'the chairman or clerk of the board' " and " 'the clerk of the municipality.' " Id. The plaintiffs in that case "commenced their appeal of the commission's decision by means of a citation directed to a proper officer to 'summon the . . . [c]ommission . . . by leaving with or at the usual place of abode of the chairman or clerk of that [c]ommission a true and attested copy of the complaint and of this citation . . . .' " Id. The plaintiff served legal process on the chairperson of the commission and the developer's agent for the service of process, but not on the clerk of the municipality, who was not named in the citation. Id., 606–607. The trial court dismissed the zoning appeal. Id., 607.

On appeal, the court noted its now superseded and overruled decision in *Simko* v. *Zoning Board of Appeals*, 206 Conn. 374, 538 A.2d 202 (1988), which was superseded by statute as stated in *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 763, and concluded that the trial court properly had dismissed the appeal because, although the clerk is not a necessary party, service on the clerk still was mandatory and, therefore, subject matter jurisdictional under § 8-8 (e), as amended by Public Acts 1988, No. 88-79 (P.A. 88-79). *Gadbois* v. *Planning Commission*, supra, 257 Conn. 608. This court determined that, although "nei-

ther the chair nor the clerk, as individuals, are necessary parties to this administrative appeal; see General Statutes § 8-8 (e); the commission is a necessary party and the failure to provide sufficient notice of the appeal to that commission deprives the court of subject matter jurisdiction. Service on the chairman . . . and on the clerk of the municipality shall be for the purpose of providing legal notice of the appeal to the board . . . ." (Internal quotation marks omitted.) *Gadbois* v. *Planning Commission*, supra, 608.

The court further concluded in *Gadbois* that "[t]he trial court properly concluded that the failure to make service upon the town clerk, a fatal jurisdictional defect, *cannot be remedied* by the so called 'savings provisions,' " including § 8-8 (q). (Emphasis added.) Id. The court concluded that the adoption of the savings provision had not "changed th[e] strict [service] requirement except in very specifically defined exceptions. Defective service of process may not be fatal when either the strict adherence to the mandate of § 8-8 (e) would work surprise or injustice, *or the problem with the service is due to negligence or error on the part of the sheriff, not the plaintiff.* Because the circumstances of this case do not satisfy either *narrowly drawn exception,* the failure of the plaintiffs to serve legal process correctly is a fatal defect. As a result, the court had no subject matter jurisdiction and correctly dismissed the appeal." (Emphasis added.) Id., 609.

In my view, this court's per curiam decision in *Gadbois* no longer is good law in light of the legislative developments articulated in our recent decisions in *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 751, and *Vitale* v. *Zoning Board of Appeals*, 279 Conn. 672, 904 A.2d 182 (2006).[11] In *Fedus*, we con-

[11] The majority contends that this dissent improperly concludes that *Gadbois* no longer is good law because, inter alia, the plaintiff did not raise this claim, and it does "not share the dissent's willingness to overrule controlling precedent without first affording the parties the opportunity to brief the

cluded that, because of legislative changes made in the wake of this court's *Simko* decisions,[12] the plaintiff's failure to name the clerk in the citation did not deprive the court of subject matter jurisdiction over the zoning appeal.[13] See *Fedus* v. *Planning & Zoning Commission*, supra, 753. The court emphasized that Public Acts 1989, No. 89-356 (P.A. 89-356), which also enacted § 8-8 (q), "signaled the preference of the legislature that zoning appeals, like civil actions, shall be treated with sufficient liberality such that technical or procedural deficiencies in the appeal do not deprive the court of subject matter jurisdiction over the appeal."[14] *Fedus* v. *Plan-*

issue, at least in the absence of a compelling justification to do so." This argument, although not without foundation in the context of a *majority* opinion, ignores one of the fundamental purposes of a dissenting opinion, which is to contribute to the subsequent development of the law, via legislation or judicial decision making. See, e.g., B. Witkin, Manual on Appellate Court Opinions (1977) § 111, p. 218 (one "proper [function]" of dissenting opinion is "to appeal to the intelligence of a future day, when a change in the law may be forthcoming"). Indeed, this concept has not been unheard of in this state, as a dissenting opinion joined by another justice that concluded, sua sponte, that a case was wrongly decided; see *Scrapchansky* v. *Plainfield*, 226 Conn. 446, 461, 469–70, 627 A.2d 1329 (1993) (*Katz, J.*, dissenting, with *Palmer, J.*, joining); led to our subsequent decision in *Conway* v. *Wilton*, 238 Conn. 653, 663, 676–77, 680 A.2d 242 (1996), to overrule *Manning* v. *Barenz*, 221 Conn. 256, 603 A.2d 399 (1992), and conclude that municipalities are not land "owners" for liability purposes under General Statutes § 52-557f (3).

[12] See generally *Simko* v. *Zoning Board of Appeals*, 205 Conn. 413, 533 A.2d 879 (1987); *Simko* v. *Zoning Board of Appeals*, supra, 206 Conn. 382 (superseded by statute as stated in *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 763).

[13] Accordingly, I note that the trial court's conclusion to the contrary, namely, that the failure to name the clerk in the citation was by itself a fatal jurisdictional defect, was improper. This improper conclusion does not, however, appear to form the basis for the trial court's decision in this case, and, thus, is not by itself a ground for reversal.

[14] In *Fedus*, the plaintiff had failed to name the town clerk in the citation, which directed the marshal to serve the chairman or clerk of the commission. *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 754. Nevertheless, the marshal served the town clerk anyway. Id. This court concluded that the trial court had improperly dismissed the appeal because "the failure to name the town clerk in the citation to their appeal did not deprive the trial court of subject matter jurisdiction over the appeal." Id., 755. The court

*ning & Zoning Commission,* supra, 770. In light of that conclusion, *Fedus* also explicitly disapproved the dicta in *Gadbois* and two other cases that "deprived [courts] of subject matter jurisdiction over appeals filed under § 8-8 merely because of technical defects in the service of process, including defects in the appeal citation. In other words, for such purposes, zoning appeals shall be treated in the same manner as civil actions. We believe that this conclusion is warranted in light of the legislature's response to *Simko* . . . and because there is no persuasive reason to follow the exacting common-law principles that led to our decisions in *Simko.*" Id., 776, discussing *Gadbois* v. *Planning Commission,* supra, 257 Conn. 604; *Spicer* v. *Zoning Commission,*

began by noting that the legislature had, in response to *Simko,* specifically amended § 8-8 (b) to "provide, inter alia, that 'service upon the clerk of the municipality shall be for the purpose of providing additional notice of [the] appeal to [the] board and shall not thereby make such clerk a necessary party to such appeal.' . . . By this amendment, the legislature indicated that, contrary to our conclusion in *Simko,* service of the appeal on the town clerk is not for the purpose of making the town clerk a necessary party to the appeal but, rather, to provide the board with additional notice of the appeal." (Citation omitted.) Id., 763.

Moreover, this court also stated that, in "view of the fact that our conclusion in *Simko*—that is, that the failure to name the town clerk in the citation deprived the court of subject matter jurisdiction over the appeal—was predicated on the underlying premise that the town clerk must be named in the citation because the town clerk is a necessary party to the appeal . . . it is reasonable to presume that, by rejecting that underlying premise, the legislature also was expressing its disapproval of our conclusion that the defective citation in *Simko* implicated the court's subject matter jurisdiction. To be more precise, our holdings in *Simko* were premised on the threshold determination that, due to the fact that the town clerk was a necessary party who had to be summoned into court, an appeal citation that failed to name the town clerk deprived the court of subject matter jurisdiction over the appeal because, as a result of the defective citation, the sheriff lacked the authority to command the clerk's appearance for any purpose. . . . When the legislature amended General Statutes (Rev. to 1987) § 8-8 (b) to make it clear that the town clerk was not a necessary party who had to be summoned into court, it evinced an intent to overrule our conclusion in *Simko* that the failure to name the town clerk in the citation as a necessary party was a jurisdictional defect requiring dismissal of the appeal." (Citations omitted; internal quotation marks omitted.) Id., 763–64.

212 Conn. 375, 562 A.2d 21 (1989); *Capalbo* v. *Planning & Zoning Board of Appeals*, 208 Conn. 480, 547 A.2d 528 (1988). Indeed, we reaffirmed our commitment to "the well established principle that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, supra, 778–79.

Most important with respect to the present case is the court's discussion in *Fedus* of the history of P.A. 89-356, § 1, which enacted the present subsections (p) and (q) of § 8-8. We emphasized in particular the addition of § 8-8 (p), which provides: "*The right of a person to appeal a decision of a board to the Superior Court and the procedure prescribed in this section shall be liberally interpreted in any case where a strict adherence to these provisions would work surprise or injustice.* The appeal shall be considered to be a civil action and, except as otherwise required by this section or the rules of the Superior Court, pleadings may be filed, amended or corrected, and parties may be summoned, substituted or otherwise joined, as provided by the general statutes." (Emphasis added.) The court stated that subsection (p), as well as § 8-8 (q), the subsection at issue in the present case, responded to the traditional approach of "the common law courts of England . . . [that] insisted upon rigid adherence to the prescribed forms of action, resulting in the defeat of many suits for technical faults rather than upon their merits. Some of that ancient jurisprudence migrated to this country . . . and has affected the development of procedural law in this state. . . . [H]owever, our legislature enacted numerous procedural reforms applicable to ordinary civil actions that are designed to ameliorate the consequences of many deviations from the prescribed norm . . . [that] *result largely from the fallibility of the legal profession,* in order generally to provide errant

parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw."[15] (Emphasis added; internal quotation marks omitted.) *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 768–69.

We further noted that "Connecticut law repeatedly has expressed a policy preference to bring about a trial on the merits of a dispute whenever possible and to secure for the litigant his or her day in court. . . . [Thus] [o]ur practice does not favor the termination of

[15] The legislative history of P.A. 89-356, § 1, does not contain any information specifically on point with respect to the proper application of § 8-8 (q). As described in *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 771–72, and *Nine State Street, LLC* v. *Planning & Zoning Commission*, supra, 270 Conn. 47–48, the general statements present in the history do, however, indicate the legislature's concern about land use appeals not being heard on their merits because of perceived procedural hypertechnicalities. For example, Senator Richard Blumenthal stated that the "bill makes a number of what may be characterized as technical changes in the law relating to appeals of land use bodies, that is, to say, zoning commissions, boards of zoning appeals and other similar agencies at a local level. Although they are technical in nature these changes are extremely important in providing some fairness to appellants, a greater measure of fairness to appellants who may feel aggrieved by the decisions adverse to them of these local bodies." 32 S. Proc., Pt. 12, 1989 Sess., p. 4217. Similarly, Representative William Wollenberg, after describing the legislature's previous concerns about the *Simko* case, stated that "[t]here has been in this field an easing of burdens as far as going forward in appeals, a more liberal view of these things . . . ." 32 H.R. Proc., Pt. 25, 1989 Sess., p. 8802. Indeed, David L. Hemond, a senior attorney with the Connecticut law revision commission, informed the judiciary committee of the "tendency of recent judicial decisions to restrict the appeal procedure from decisions of zoning and planning commissions and from zoning boards of appeals, thereby resulting in dismissals prior to a hearing on the merits. . . . While the problem was addressed in part by [P.A.] 88-79, the tendency of the court to issue restrictive interpretations—because these appeals are a creature of statute—and the opportunity for procedural errors resulting in inappropriate dismissals of appeals still remain." (Citations omitted.) Conn. Joint Standing Committee Hearings, Judiciary, Pt. 6, 1989 Sess., p. 2113. Hemond advocated for "[p]ublic policy [to] allow a hearing on the merits for good faith appellants who make reasonable efforts to comply with the statutory guidelines. The proposed [legislation] should increase the likelihood of an appellant receiving that hearing on the merits." Id.

proceedings without a determination of the merits of the controversy whe[n] that can be brought about with due regard to necessary rules of procedure. . . . For that reason, [a] trial court should make every effort to adjudicate the substantive controversy before it . . . and, whe[n] practicable, should decide a procedural issue so as not to preclude hearing the merits of an appeal." (Citations omitted; internal quotation marks omitted.) Id., 769–70; see also *Nine State Street, LLC* v. *Planning & Zoning Commission*, supra, 270 Conn. 50–52 (relying on "clear directive" of § 8-8 [p] to conclude that occurrence of Memorial Day extended fifteen day appeal period under § 8-8 [b] by one day because "a strict adherence to the fifteen day statutory period prescribed in § 8-8 [b] would work surprise or injustice by reducing the statutory period from fifteen days to twelve days, the Friday before the holiday when the city clerk's office would last have been open"). In sum, the court emphasized in *Fedus* that the "language of P.A. 89-356, § 1, signaled the preference of the legislature that zoning appeals, like civil actions, shall be treated with sufficient liberality such that technical or procedural deficiencies in the appeal do not deprive the court of subject matter jurisdiction over the appeal." *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 770.

Indeed, this court's recent opinion in *Vitale* v. *Zoning Board of Appeals*, supra, 279 Conn. 672, reflects the increased flexibility embodied by the *Fedus* decision in the context of § 8-8 (q). After concluding that the trial court lacked subject matter jurisdiction because the marshal had disregarded the instructions on the summons and failed to serve process in accordance with the statute then in effect;[16] id., 680; the court noted

[16] In *Vitale*, although the summons had "directed the marshal to serve legal process upon the chairman or clerk of the defendant in addition to the . . . town clerk"; *Vitale* v. *Zoning Board of Appeals*, supra, 279 Conn. 675; the "appeal . . . was served on July 15, 2003, prior to October 1, 2004, the effective date of [Public Acts 2004, No. 04-78 (P.A. 04-78)]. Accordingly,

its disagreement with the trial court's determination "that § 8-8 (q), one of the savings provisions contained in § 8-8, was unavailable to the plaintiffs in the present case because they had not attempted to correct the service defect by serving the chairperson or clerk of the defendant within fifteen days of receiving notice of the defective service by way of the marshal's return." Id., 681–82 n.9. It emphasized that "[t]he savings provision codified at § 8-8 (q) is a remedial provision that warrants a broad construction," and stated that "§ 8-8 (q) is available to a plaintiff upon *any determination* by a court that service was defective. Section 8-8 (q) therefore is available to the plaintiffs, should they choose to invoke it, upon the determination by this court that the service of process in this matter was insufficient because it failed to comply with [Public Acts 2004, No. 04-78]." (Emphasis altered.) Id.

In the present case, the record reveals that service failed because of Gyle's failure to follow the proper statutory procedure governing the service of process in zoning appeals—a procedure that he admittedly was aware of, but nevertheless did not comply with.[17] Thus,

P.A. 04-78 dictates that service of process . . . should have been made 'by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and . . . the clerk of the municipality.' P.A. 04-78, § 1. The plaintiffs' marshal, however, followed the service requirements of [General Statutes] § 52-57 (b) (5) and left two copies of the appeal papers with the town clerk. He did not leave any copy of the appeal papers with or at the usual place of abode of the chairman or clerk of the defendant. The plaintiffs therefore, did not comply with the service requirements of § 8-8 (f), as made applicable by P.A. 04-78." *Vitale* v. *Zoning Board of Appeals*, supra, 679.

[17] As the majority notes, Gyle, who had been serving process since 2000 and was familiar with the legal requirements for the service of process in zoning appeals, received only one copy of the process at the office of the plaintiff's attorney, and did not ask for or make another copy despite the requirements of § 8-8 (f) (2), which recently had been amended on October 1, 2004. See footnote 2 of this dissenting opinion. Gyle then failed to comply with the amended version of § 8-8 (f) (2), and improperly served the chairman of the zoning commission, whom he had served on previous occasions under the previously applicable version of the statute; see General Statutes § 8-8

it is undisputed that the marshal knew the law, but failed to follow it due to his own inadvertence or inattention, which would fit under the dictionary definition of "neglect" properly articulated by the majority, namely, " 'to carelessly omit doing (something that should be done) either altogether or almost together . . . .'[18] Webster's Third New International Dictionary."

(f) (1); rather than the borough clerk. Gyle did not realize his mistakes of that day until the plaintiff's attorney contacted him approximately two weeks later in response to the return of service indicating that only the chairman had been served. Most significantly, Gyle stated in his affidavit that he had "*no excuse*" for the error because he was fully aware of the statutory requirements, and that he merely had failed to think about them prior to serving the appeal in this case. (Emphasis added.)

[18] The majority views my interpretation of § 8-8 (q) as inconsistent with the scope of the marshal's duties under both the common law and General Statutes § 6-32, which it views as limited to serving process under the direction of the attorney. The majority relies on principles governing civil liability for marshals, as articulated in *Aetna Ins. Co.* v. *Blumenthal*, 129 Conn. 545, 553–54, 29 A.2d 751 (1943), *Watson* v. *Watson*, 9 Conn. 140, 146–47 (1832), and most recently, *Fair Cadillac Oldsmobile Corp.* v. *Allard*, 41 Conn. App. 659, 662, 677 A.2d 462 (1996), which states that "a sheriff is not required to look beyond the process that is given to him for service. . . . A sheriff has a statutory duty to serve and to make prompt return of all process that is given to him for service. . . . Under § 6-32, a sheriff who neglects to make demand pursuant to an execution becomes liable for default in the performance of his duties . . . and is liable for double damages to the aggrieved party. . . . Additionally, it is well established in Connecticut that if a writ appears to be good on its face, appears to have been issued by a competent authority, and has been issued with legal regularity, a sheriff has a duty to serve it and will be protected in making such service." (Citations omitted.) See also id., 663 (rejecting argument that "in addition to his statutory duty to serve an execution, a sheriff is responsible for ascertaining any possible legal defects in a facially valid execution" because "[t]he law does not require or expect sheriffs to have the education and training to make such determinations"). In my view, case and statutory law informing the civil liability of the marshal for defective service simply is not relevant in this appeal, which concerns only whether a savings statute, which is to be applied and construed broadly, applies to rescue *the plaintiff's* appeal from a technical defect in service in a case wherein Gyle admittedly could have served the process properly, had he followed statutory requirements of which he was well aware. Put differently, that Gyle may well be immune from civil liability does not, on the facts of this case, automatically deprive the plaintiff of the benefit of § 8-8 (q).

Although I agree with the majority that the plaintiff's attorney certainly is not blameless for the failure of service in this case, the broad reading that the legislature has directed this court to give to the zoning appeal statutes; see General Statutes § 8-8 (p); requires me to conclude that § 8-8 (q) permits the refiling of a zoning appeal that previously has been dismissed for any reason that is in some way attributable to the marshal charged with serving the process therein.[19]

The majority's construction and application of § 8-8 (q) also has the added flaw of changing the statute by inserting the word "solely" therein. The majority appears to read § 8-8 (q) as providing: "If any appeal has failed to be heard on its merits because of insufficient service or return of the legal process [*solely*] due to unavoidable accident or the default or neglect of the officer to whom it was committed . . . the appellant shall be allowed an additional fifteen days from determination of that defect to properly take the appeal." (Emphasis added.) "We are not permitted to supply statutory language that the legislature may have chosen to omit." (Internal quotation marks omitted.) *Ventres* v. *Goodspeed Airport, LLC*, 275 Conn. 105, 160, 881

---

[19] The majority states that the "evident purpose of § 8-8 (q) is to avoid the unfairness that otherwise would result from holding a plaintiff responsible for a failure of service that is attributable not to the plaintiff, but to the marshal. In enacting § 8-8 (q), the legislature recognized that neither a plaintiff nor the plaintiff's counsel personally effects service of process; rather, such service is delegated to a third party, a marshal, over whom the plaintiff does not have complete control. . . . Consequently, it is eminently fair and reasonable that, under § 8-8 (q), a plaintiff's right to appeal will not be extinguished merely because the marshal, for reasons not attributable to the plaintiff or the plaintiff's attorney, fails to effectuate service as instructed." Although I agree that this application of § 8-8 (q) would have a salutary effect in the case, such as *Vitale* v. *Zoning Board of Appeals*, supra, 279 Conn. 672, wherein service failed solely because of a marshal's inattention or negligence, for the reasons stated in this dissenting opinion, I nevertheless conclude that the proper scope of the statute exceeds this limited factual scenario posited by the majority.

A.2d 937 (2005), cert. denied, 547 U.S. 1111, 126 S. Ct. 1913, 164 L. Ed. 2d 664 (2006). Accordingly, given the broad construction that the legislature has required us to give to § 8-8 (q), I believe that it applies in situations such as the present case, wherein the service failure is in some way attributable to the marshal, even if the attorney is partially, or even largely, responsible for the failure as well.[20]

In sum, it is undisputed that, if Gyle had remembered the amendment to § 8-8 (f) correctly and had, accordingly, served the borough clerk, this zoning appeal could have proceeded without a jurisdictional problem, despite the plaintiff's failure to name the clerk in the summons used as process in this appeal. See *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 753. Thus, the majority's construction and application of § 8-8 (q) invites a return to the pre-*Fedus* interpretations of the zoning appeal statutes that were rife with the opportunities for the dismissal of land use appeals on the basis of hypertechnicalities. The majority's opinion fails to effectuate those changes implemented by the legislature in the enactment of P.A. 89-356 that were "designed to ameliorate the consequences of many devi-

---

[20] I agree with the majority's rejection of the plaintiff's reliance on the Appellate Court decision in *Kobyluck* v. *Planning & Zoning Commission*, 84 Conn. App. 160, 852 A.2d 826, cert. denied, 271 Conn. 923, 859 A.2d 579 (2004). In that case, the court concluded that a service failure because of the sheriff's failure to list the correct home address for the commission chairman, who was named on the summons, could be saved by § 8-8 (q) "because the sheriff left the appeal papers with the . . . town clerk instead of serving the chairman of the commission in person. The [sheriff's] failure to provide the correct home address for the chairman of the commission did not cause the incorrect service of the appeal." Id., 169. I agree with the majority that *Kobyluck* is of minimal value herein because, in that case, the service problems were rooted in the marshal's failure to perform simple investigative work to determine the chairman's address, and were not predicated upon a legal error or omission. Moreover, *Kobyluck* lacks persuasive value because, like *Gadbois*, it predates this court's decisions in *Fedus* and *Vitale*.

ations from the prescribed norm . . . [that] result largely from the fallibility of the legal profession, in order generally to provide errant parties with an opportunity for cases to be resolved on their merits rather than dismissed for some technical flaw." (Internal quotation marks omitted.) Id., 769. Put differently, the majority frustrates the legislative purpose of P.A. 89-356 by keeping the present zoning appeal from being heard on its merits based on technical mistakes, while at the same time sowing legal malpractice claims. In the absence of clarifying legislation providing explicitly to that effect, I would not interpret § 8-8 (q) in such a restrictive manner, and would have the plaintiff's appeal heard on its merits.

I would, therefore, reverse the judgment of the trial court, and remand the case to that court with direction to deny the defendant's motion to dismiss and for further proceedings according to law. Accordingly, I respectfully dissent.