MORDECHAI ABEL ET AL. *v.* PLANNING AND
ZONING COMMISSION OF THE TOWN OF
NEW CANAAN ET AL.
(SC 18333)
(SC 18418)

Norcott, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

Argued April 27—officially released July 13, 2010

*Sanjit Shah*, pro se, with whom was *Marjorie Shan-sky*, for the appellants (plaintiffs Sanjit Shah et al.).

*Stephen A. Finn*, with whom was *Mary-Kate Smith*, for the appellees (defendants Grace Property Holdings, LLC, et al.).

*Christopher J. Jarboe*, for the appellee (named defendant).

*Opinion*

McLACHLAN, J. The named defendant, the planning and zoning commission (commission) for the town of New Canaan (town), granted the applications of the defendants, Grace Property Holdings, LLC (Grace Property) and Pacific Farm, LLC (Pacific Farm),[1] for a subdivision of property located in the town and for a special

---

[1] On March 17, 2010, this court granted Pacific Farm's motion to substitute Grace Farms Foundation, Inc., as a defendant. For convenience, we refer to Pacific Farm, Grace Property and Grace Farms Foundation, Inc., individually by name and collectively as the defendants.

permit to build a church on a newly created parcel. The commission subsequently granted an application for an amendment to the special permit. The plaintiffs, Sanjit Shah, Mary Shah, Daniel Cooper and Karen Cooper,[2] who own land in New York within 100 feet of the undivided property, appealed separately from each approval pursuant to General Statutes § 8-8 (b).[3] The defendants filed motions to dismiss the appeals, which the trial court in each appeal granted on the ground that the plaintiffs did not have standing to appeal because their properties are not located in the state of Connecticut. The plaintiffs then filed these appeals from the judgments of dismissal.[4] We reverse the judgments of the trial court in both appeals.

The record reveals the following undisputed facts and procedural history. Pacific Farm owned a seventy-four acre parcel of land known as Windsome Farms (property) in the town, which is bounded to the north by Puddin Hill Road in New York and Lukes Wood Road in Connecticut, and to the east by Smith Ridge Road in Connecticut. In 2007, Pacific Farm entered into a contract with Grace Property, pursuant to which Grace Property agreed to purchase approximately forty-eight acres of the property for the purpose of building a church.

---

[2] The named plaintiff, Mordechai Abel, and Savyona Abel are also plaintiffs in the underlying administrative appeals, but they have not participated in the appeals to this court. Unless otherwise indicated, all references in this opinion to the plaintiffs are to Sanjit Shah, Mary Shah, Daniel Cooper and Karen Cooper.

[3] General Statutes § 8-8 (b) provides in relevant part: "[A]ny person aggrieved by any decision of a board, including . . . a special permit or special exception pursuant to section 8-3c, may take an appeal to the superior court for the judicial district in which the municipality is located . . . ."

[4] After obtaining certification to appeal pursuant to General Statutes § 8-9, the plaintiffs appealed from the judgments of the trial court to the Appellate Court. We then transferred the appeals to this court pursuant to General Statutes § 51-199 (c) and Practice Book § 65-2. Thereafter, this court consolidated the appeals for purposes of oral argument.

On July 30, 2007, Pacific Farm and Grace Property filed a subdivision application and an application for a special permit with the commission. The subdivision application sought approval of a plan to resubdivide[5] the property into two parcels, parcel A and parcel B. The special permit application sought approval of a proposal to construct the church on parcel B. The proposal was divided into phase one, which consisted of renovating and adding to an existing building to create a temporary sanctuary pending construction of a permanent sanctuary, and phase two, which consisted of the construction of a new sanctuary building with seating for approximately 1200 persons and parking for 321 vehicles. The commission conducted public hearings on both applications in August and September, 2007. On November 27, 2007, the commission granted the subdivision application. It also granted the special permit application with the condition that the applicants would not be allowed to construct phase two, largely because of traffic concerns.

Thereafter, the plaintiffs, who own land in New York[6] within 100 feet of the undivided property, appealed from the commission's decisions to the trial court pursuant to § 8-8 claiming that the subdivision and the proposed project violated various town zoning and subdivision regulations (first appeal). The defendants filed motions to dismiss the first appeal on the grounds that: (1) the plaintiffs had served only one copy of process on the town clerk, instead of two copies as required by § 8-8 (f) (2)[7] and General Statutes § 52-57 (b) (5);[8] (2) the

---

[5] The property previously had been subdivided into ten lots.

[6] Sanjit Shah and Mary Shah own land in Lewisboro, New York. Daniel Cooper and Mary Cooper own land in Pound Ridge, New York.

[7] General Statutes § 8-8 (f) (2) provides: "For any appeal taken on or after October 1, 2004, process shall be served in accordance with subdivision (5) of subsection (b) of section 52-57. Such service shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the clerk of the municipality or the chairman or clerk of the board a necessary party to the appeal."

[8] General Statutes § 52-57 (b) provides in relevant part: "Process in civil actions against the following-described classes of defendants shall be served

plaintiffs did not own property within 100 feet of the land involved in the commission's decision, namely, parcel B on which the church was to be built, as required to establish statutory standing under § 8-8 (a) (1);[9] (3) the plaintiffs could not be aggrieved by the commission's decision because their property was not located in the state of Connecticut; and (4) the plaintiffs improperly had challenged two of the commission's decisions in one appeal. The trial court, *Karazin, J.*, rejected the first, second and fourth claims, but concluded that the plaintiffs did not have standing to appeal from the commission's decision pursuant to § 8-8 because their properties were located in New York. The court reasoned that, in enacting § 8-8, the legislature had intended to protect only the interests of persons who own land within this state. Accordingly, the trial court dismissed the plaintiffs' first appeal.[10] The plaintiffs then initiated the appeal to this court in Docket No. SC 18333.

Meanwhile, Pacific Farm and Grace Property had filed with the commission an application for an amendment to the special permit to allow them to construct a permanent church with a capacity for 900 persons. After a public hearing, the commission approved the

as follows . . . (5) against a board, commission, department or agency of a town, city or borough, notwithstanding any provision of law, upon the clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second copy to the board, commission, department or agency . . . ."

[9] General Statutes § 8-8 (a) (1) provides: " 'Aggrieved person' means a person aggrieved by a decision of a board and includes any officer, department, board or bureau of the municipality charged with enforcement of any order, requirement or decision of the board. In the case of a decision by a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, 'aggrieved person' includes any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

[10] The trial court denied the motion to dismiss with respect to the first appeal by Mordechai Abel and Savyona Abel, because their property is located in Connecticut. See footnote 2 of this opinion.

application. The plaintiffs appealed from that decision pursuant to § 8-8, claiming that the proposed project violated various town zoning regulations and that the commission had acted arbitrarily, capriciously and in abuse of its discretion in approving the amendment to the special permit (second appeal). The defendants filed motions to dismiss that appeal, again claiming that the trial court lacked jurisdiction because the plaintiffs did not own land within 100 feet of the property involved in the commission's decision and because they did not own land within the state of Connecticut. The trial court, *Pavia, J.*, rejected the defendants' claim that the plaintiffs were not statutorily aggrieved because they did not own land within 100 feet of parcel B, but agreed with Judge Karazin's conclusion in the first appeal that the plaintiffs did not have standing to appeal pursuant to § 8-8 (b) because they did not own land in this state. The trial court also concluded that, because Judge Karazin had ruled on that issue in the first appeal, the plaintiffs were barred by the doctrine of collateral estoppel from relitigating it. Accordingly, the trial court dismissed the second appeal.[11] The plaintiffs then initiated the appeal to this court in Docket No. SC 18418. After the two appeals to this court were filed, Pacific Farm transferred all of its right, title and interest in the property to Grace Farms Foundation, Inc. (Grace Farms), and this court granted Pacific Farm's motion to substitute Grace Farms as a party defendant in both appeals.

The plaintiffs claim in both appeals that: (1) the trial court improperly concluded that they did not have standing to appeal from the commission's decisions pursuant to § 8-8 because they did not own land in this state; and (2) if the trial court's interpretation of § 8-8 was correct, the statute violates article first, § 10, of

---

[11] The trial court, *Pavia, J.*, denied the defendants motion to dismiss with respect to the second appeal by Mordechai Abel and Savyona Abel, because their property was located in Connecticut. See footnote 2 of this opinion.

the Connecticut constitution[12] and article four, § 2, of the United States constitution.[13] The defendants dispute these claims and claim as an alternate ground for affirmance that the trial court improperly denied their motions to dismiss on the ground that the plaintiffs' land was not within 100 feet of the land involved in the commission's decisions. We conclude that the trial court improperly concluded that the plaintiffs did not have standing to appeal from the commission's decisions pursuant to § 8-8 because they did not own land in this state,[14] and we reject the defendants' alternate ground for affirmance.

In Docket No. SC 18418, the plaintiffs raise the additional claims that: (1) the trial court improperly concluded that their claims in the second appeal were barred by the doctrine of collateral estoppel; and (2) even if this court concludes that they are not statutorily aggrieved under § 8-8 (a) (1) because they do not own land within 100 feet of the land involved in the commission's decision, they are classically aggrieved. The defendants dispute these claims. We conclude that we need not determine whether the plaintiffs' second appeal to the trial court was barred by the doctrine of collateral estoppel because, even if it was, the judgment of the trial court in that case must be reversed in light of our decision reversing the judgment of the trial court in the first appeal. We need not reach the plaintiffs' second claim because we conclude that the plaintiffs were statutorily aggrieved.

---

[12] Article first, § 10, of the Connecticut constitution provides: "All courts shall be open, and every person, for an injury done to him in his person, property or reputation, shall have remedy by due course of law, and right and justice administered without sale, denial or delay."

[13] Article four, § 2, of the United States constitution provides: "The Citizens of each State shall be entitled to all Privileges and Immunities of Citizens in the several States."

[14] Accordingly, we need not reach the plaintiffs' constitutional claims.

Finally, in Docket No. SC 18333, the defendants claim as an additional alternate ground for affirmance that the trial court should have dismissed the appeal because the plaintiffs had not properly served process on the commission. We reject this claim.

I

## CLAIMS RELATING TO BOTH APPEALS

A

We first address the plaintiffs' claim that the trial court in each appeal improperly concluded that they lacked standing to appeal from the commission's decisions pursuant to § 8-8 because they do not own land in this state. The plaintiffs contend that the phrase "any person" as used in § 8-8 (a) (1) plainly and unambiguously encompasses all persons who own land within 100 feet of the land involved in a board or commission's decision, regardless of whether they own land within this state. The defendants counter that there is a strong presumption against the extraterritorial application of statutes that can be overcome only if the legislature has expressly stated that it will have extraterritorial effect. See *State* v. *Cardwell*, 246 Conn. 721, 741, 718 A.2d 954 (1998) ("we will not apply a criminal statute extraterritorially without a significant indication that the legislature intended it to have that effect"); *Kennerson* v. *Thames Towboat Co.*, 89 Conn. 367, 374, 94 A. 372 (1915) ("[u]nless the intention to have a statute operate beyond the limits of a [s]tate is clearly expressed or reasonably to be inferred from the language of the [Workers' Compensation] Act, or from its purpose, subject-matter, or history, the presumption is that the statute is intended to have no extraterritorial effect"). Accordingly, they argue, "any person" is limited to persons who own land in Connecticut. Although we do not agree with the plaintiffs that § 8-8 (a) (1) is plain and unambiguous, we conclude that it confers

standing to appeal on persons who do not own land within this state.

In the first appeal, the trial court and the plaintiffs characterized the defendants' claim that the plaintiffs were not entitled to appeal from the commission's decisions under § 8-8 (b) because they do not own land in this state as raising a question of aggrievement. We conclude, however, that because this court is not being asked to determine whether the type of injury suffered by the plaintiffs came within the scope of the statute, but, instead, whether they are proper parties to bring an appeal under the statute, it is more precise to characterize the claim as raising a question of statutory standing. See *Ganim* v. *Smith & Wesson Corp.*, 258 Conn. 313, 347, 780 A.2d 98 (2001) ("In order for a plaintiff to have standing, it must be a proper party to request adjudication of the issues. . . . Standing focuses on whether a party is the proper party to request adjudication of the issues, rather than on the substantive rights of the aggrieved parties." [Citation omitted; internal quotation marks omitted.]).

"In order to determine whether a party has standing to make a claim under a statute, a court must determine the interests and the parties that the statute was designed to protect. . . . Essentially the standing question in such cases is whether the . . . statutory provision on which the claim rests properly can be understood as granting persons in the plaintiff's position a right to judicial relief. . . . The plaintiff must be within the zone of interests protected by the statute. . . . It has been [noted] that the zone of interests test bears a family resemblance to the scope of the risk doctrine in the law of torts. . . . In tort law, it is not enough that the defendant's violation of the law caused injury to a plaintiff. The defendant must also owe that plaintiff a duty. Similarly, with respect to the law of [statutory] standing, it is not enough that a party is

injured by an act or omission of another party. The defendant must also have violated some duty *owed to the plaintiff.*" (Citations omitted; emphasis in original; internal quotation marks omitted.) *McWeeny* v. *Hartford*, 287 Conn. 56, 65, 946 A.2d 862 (2008).

Because an understanding of the reasons for and the scope of the doctrine of extraterritoriality is necessary for the resolution of the plaintiffs' claim that they come within the zone of interests protected by the statutory scheme, including their claim that § 8-8 (a) (1) plainly and unambiguously encompasses persons who do not own land in this state, a review of the cases discussing that doctrine is appropriate at the outset. "It is a longstanding principle of American law that legislation of Congress, unless a contrary intent appears, is meant to apply only within the territorial jurisdiction of the United States. . . . This canon of construction . . . is a valid approach whereby unexpressed congressional intent may be ascertained. . . . It serves to protect against unintended clashes between our laws and those of other nations which could result in international discord." (Citations omitted; internal quotation marks omitted.) *Equal Employment Opportunity Commission* v. *Arabian American Oil Co.*, 499 U.S. 244, 248, 111 S. Ct. 1227, 113 L. Ed. 2d 274 (1991). Many state courts have applied this principle to state statutes. See *Avery* v. *State Farm Mutual Automobile Ins. Co.*, 216 Ill. 2d 100, 184–85, 835 N.E.2d 801 (2005) (noting "longstanding rule of construction in Illinois which holds that a statute is without extraterritorial effect unless a clear intent in this respect appears from the express provisions of the statute" [internal quotation marks omitted]); *Consumer Protection Division* v. *Outdoor World Corp.*, 91 Md. App. 275, 287, 603 A.2d 1376 ("as a general rule, one [s]tate cannot regulate activity occurring in another [s]tate, and . . . in deference to that principle, regulatory statutes are generally con-

strued as not having extra-territorial effect unless a contrary legislative intent is expressly stated"), cert. denied, 327 Md. 523, 610 A.2d 796 (1992); *Sexton* v. *Ryder Truck Rental*, 413 Mich. 406, 434, 320 N.W.2d 843 (1982) (because "[t]he general rule of law is that no state or nation can, by its laws, directly affect, bind, or operate upon property or persons beyond its territorial jurisdiction . . . [i]n order for a statute to have extraterritorial application, there must be clear legislative intent" [citations omitted; internal quotation marks omitted]). As these cases reveal, the primary reason for the presumption against the extraterritorial application of statutes is that states have limited *authority* to regulate conduct beyond their territorial jurisdiction. Thus, this rule of statutory interpretation is akin to other rules of construction intended to preserve the validity of a statute. See, e.g., *State* v. *Indrisano*, 228 Conn. 795, 805, 640 A.2d 986 (1994) ("[I]n evaluating [a] . . . challenge to the constitutionality of [a] statute, we read the statute narrowly in order to save its constitutionality, rather than broadly in order to destroy it. We will indulge in every presumption in favor of the statute's constitutionality . . . ." [Internal quotation marks omitted.]).

A number of courts have held, however, that the presumption that a statute does not operate outside the state's territorial jurisdiction applies not only when the application of the statute would regulate out-of-state conduct or property, and would therefore be of questionable validity as applied, but also when the application of the statute would provide a remedy or a benefit to out-of-state persons, which the state clearly has the power to do. For example, in *BMW Stores, Inc.* v. *Peugeot Motors of America, Inc.*, 860 F.2d 212, 213 (6th Cir. 1988), the United States Court of Appeals for the Sixth Circuit construed a Kentucky statute that entitled motor vehicle dealerships to protest the establishment

of a new motor vehicle dealership selling vehicles in the same line if the new dealership would be within a ten mile radius of the existing dealership. The plaintiff, a motor vehicle dealership in Ohio, had brought an action in the United States District Court for the Eastern District of Kentucky, claiming that the defendant, which intended to open a dealership in Kentucky, had violated the notice provisions of the statute. Id. The United States Court of Appeals for the Sixth Circuit ultimately concluded that the doctrine of extraterritoriality did not apply to the statute because "Kentucky can define the duties of its citizens without that definition being considered extraterritorial" and, "where the defendants' conduct occurs in-state, application of the law to that conduct is not extraterritorial." (Internal quotation marks omitted.) Id., 214. Nevertheless, because the express policy of the statute was to " 'protect and preserve the investments and properties of *the citizens of [Kentucky]*' "; (emphasis in original) id., 215; the court concluded that the statute did not entitle out-of-state dealerships to protest the establishment of dealerships within the state. Id.; see also *Fireside Nissan, Inc.* v. *Fanning*, 30 F.3d 206, 211 (1st Cir. 1994) (Massachusetts dealership was not entitled to protest establishment of Rhode Island dealership under Rhode Island statute that was intended to protect Rhode Island dealerships); *Levy* v. *Keystone Food Products*, United States District Court, Docket Nos. 07-5502, 08-1277, 08-1554, 2008 WL 4115856, *6 (E.D. Pa. August 28, 2008) ("[s]tate consumer protection laws are designed to protect the residents of the state in which the statutes are promulgated" [internal quotation marks omitted]); *Peerless Ins. Co.* v. *Clark*, 29 Colo. App. 436, 440–41, 487 P.2d 574 (1971) (insurance company, as surety on bond issued to motor vehicle dealer, not liable under Colorado antifraud statute for dealer's fraud that occurred outside of Colorado).

Other courts have concluded, however, that there is no presumption that statutes that provide remedies or benefits are not for the benefit of persons outside the state's territorial jurisdiction, especially when the provision of a remedy to such persons would also provide in-state benefits. See *Metropolitan Enterprise Corp.* v. *United Technologies International Corp.*, United States District Court, Docket No. 3:03CV1685JBA, 2004 U.S. Dist. LEXIS 12274 (D. Conn. June 28, 2004) ("[e]xamination of the statutory language [of the Connecticut Unfair Trade Practices Act] and interpretative case law reveals no reason why a straightforward application of the phrase 'in this [s]tate' would exclude the conduct alleged here: [a] Connecticut seller, in connection with the sale or the offering for sale of its jet engines, hatching and implementing a plan inside the borders of Connecticut the deceptive or unfair effect of which is felt outside those borders"); *Diamond Multimedia Systems, Inc.* v. *Superior Court*, 19 Cal. 4th 1036, 1063, 968 P.2d 539, 80 Cal. Rptr. 2d 828 (1999) (concluding that California antifraud statute could provide remedy to out-of-state persons without operating extraterritorially because conduct that gave rise to liability occurred in California and stating that "[l]egislature may reasonably conclude that California does have a legitimate interest in discouraging unlawful conduct that has a potential to harm California investors as well as persons in other states"); *Rosenthal* v. *Dean Witter Reynolds, Inc.*, 908 P.2d 1095, 1104–1105 (Colo. 1995) (Colorado blue sky statute provided remedy to out-of-state purchaser of bonds).

With this background in mind, we turn to the question of whether the plaintiffs in the present case are within the class of persons that the appeal provisions of § 8-8 and the related land use statutes were intended to protect. This is a question of statutory interpretation over which our review is plenary. See *McWeeny* v. *Hart-*

*ford,* supra, 287 Conn. 66. "When construing a statute, [o]ur fundamental objective is to ascertain and give effect to the apparent intent of the legislature. . . . In other words, we seek to determine, in a reasoned manner, the meaning of the statutory language as applied to the facts of [the] case, including the question of whether the language actually does apply. . . . In seeking to determine that meaning, General Statutes § 1-2z directs us first to consider the text of the statute itself and its relationship to other statutes. If, after examining such text and considering such relationship, the meaning of such text is plain and unambiguous and does not yield absurd or unworkable results, extratextual evidence of the meaning of the statute shall not be considered. . . . When a statute is not plain and unambiguous, we also look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) Id.

We begin with the language of § 8-8 (b), which provides that "any person aggrieved by any decision of a board, including . . . a special permit or special exception pursuant to section 8-3c, may take an appeal to the superior court for the judicial district in which the municipality is located . . . ." Section 8-8 (a) (1) defines an aggrieved person as "any person owning land that abuts or is within a radius of one hundred feet of any portion of the land involved in the decision of the board."

We conclude that, contrary to the plaintiffs' claim, the phrase "any person" as used in § 8-8 (a) (1) does not plainly and unambiguously encompass persons outside the state's territorial jurisdiction. A number of courts have held that the use of the word "any" in a statute

does not rebut the presumption that the statute does not operate extraterritorially. See *Dur-Ite Co.* v. *Industrial Commission,* 394 Ill. 338, 349, 68 N.E.2d 717 (1946) (doctrine of extraterritoriality applies "to statutes using general words, such as any and all, in describing the persons or acts to which the statute applies" [internal quotation marks omitted]); *Sexton* v. *Ryder Truck Rental,* supra, 413 Mich. 435 (same). We agree with these courts that, when a statute regulates conduct, the use of the phrase "any person" does not plainly and unambiguously refer to persons outside the state's territorial jurisdiction because we presume that the legislature is aware of the constraints on its power to regulate conduct extraterritorially. See *R.C. Equity Group, LLC* v. *Zoning Commission,* 285 Conn. 240, 257 n.20, 939 A.2d 1122 (2008) (court presumes that legislature is aware of common law and statutory backdrop of its enactments). We recognize that, because § 8-8 merely provides a procedural remedy, construing the phrase "any person" to encompass persons who do not own land in this state would not result in the regulation of out-of-state conduct or property. See *BMW Stores, Inc.* v. *Peugeot Motors of America,* supra, 860 F.2d 214; *Diamond Multimedia Systems, Inc.* v. *Superior Court,* supra, 19 Cal. 4th 1059. Moreover, we agree with the courts that have concluded that, when a state statute does not regulate conduct outside the state, there is no presumption that the statute does not apply to persons outside the state because the reason for that presumption—that states have limited power to regulate conduct outside their territorial jurisdiction—does not apply. See, e.g., *Diamond Multimedia Systems, Inc.* v. *Superior Court,* supra, 1059. Nevertheless, because the phrase "any person" is ubiquitous in our statutes, including statutes that regulate conduct; see generally, e.g., General Statutes, tit. 53 and 53a; we cannot conclude that the legislature intends, in every instance in

which it uses the phrase, to encompass persons outside the territorial jurisdiction of the state. Accordingly, in construing § 8-8 (a) (1), we must "look for interpretive guidance to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter . . . ." (Internal quotation marks omitted.) *McWeeny* v. *Hartford*, supra, 287 Conn. 66.

The public policy underlying the statutes authorizing municipalities to adopt planning regulations, which govern subdivision plans; see General Statutes § 8-26 (a); is "to promote, with the greatest efficiency and economy, the coordinated development of the municipality and the general welfare and prosperity of its people," and "to secure the uniform and harmonious growth of villages, towns and cities." *Ferndale Dairy, Inc.* v. *Zoning Commission*, 148 Conn. 172, 176, 169 A.2d 268 (1961). Zoning regulations, which are "concerned primarily with the use of property"; id.; and which govern the issuance of special permits; see General Statutes § 8-2 (a); are intended to "protect the public health, safety, convenience and property values." General Statutes § 8-2 (a);[15] see also New

---

[15] General Statutes § 8-2 (a) provides in relevant part: "All such regulations shall be uniform for each class or kind of buildings, structures or use of land throughout each district, but the regulations in one district may differ from those in another district, and may provide that certain classes or kinds of buildings, structures or uses of land are permitted only after obtaining a special permit or special exception from a zoning commission, planning commission, combined planning and zoning commission or zoning board of appeals, whichever commission or board the regulations may, notwithstanding any special act to the contrary, designate, subject to standards set forth in the regulations and to conditions necessary to protect the public health, safety, convenience and property values. . . . Such regulations shall be designed to lessen congestion in the streets; to secure safety from fire, panic, flood and other dangers; to promote health and the general welfare; to provide adequate light and air; to prevent the overcrowding of land; to avoid undue concentration of population and to facilitate the adequate provision for transportation, water, sewerage, schools, parks and other

Canaan Zoning Regs., art. I, § 1.2.[16]

We see no reason why, in enabling municipalities to adopt planning and zoning regulations designed to advance these public interests, and in authorizing landowners in near proximity to the subject land use to enforce compliance with the regulations through the appeal process, the legislature would have intended to exempt from such enforcement properties in locations where the greatest and most immediate effect of a proposed development would be on the owners of property that is located in another state. The statutory scheme assumes that uniformity within a zone, an orderly development process and compliance with special permit regulations are inherently beneficial to a municipality, and to its present and future citizens, even if no person owning land within the municipality is immediately and directly affected by a proposed project.[17] Moreover, if land use in a municipality in this state would render an adjoining road in another state unreasonably dangerous, it is reasonable to conclude that citizens of this state also will use the adjoining road and will be

_____

public requirements. Such regulations shall be made with reasonable consideration as to the character of the district and its peculiar suitability for particular uses and with a view to conserving the value of buildings and encouraging the most appropriate use of land throughout such municipality. . . ."

[16] The town zoning regulations provide in relevant part that the purposes of the regulations are: "[p]rotecting the character and the historic, social and economic stability of all parts of the [t]own and ensuring that development is orderly and beneficial"; New Canaan Zoning Regs., art I, § 1.2.3; "[p]rotecting and conserving the value of land and buildings appropriate to the various zones established by these [r]egulations and throughout the [t]own"; id., § 1.2.4; and "[c]ontrolling development to an amount commensurate with the capacity of the land and the availability and capacity of public facilities and services, thereby facilitating adequate provision for vehicular and pedestrian circulation, water, sewerage, schools, parks and other public requirements." Id., § 1.2.8.

[17] See *Sun-Brite Car Wash, Inc.* v. *Board of Zoning & Appeals*, 69 N.Y.2d 406, 413, 508 N.E.2d 130, 515 N.Y.S.2d 418 (1987) ("the welfare of the entire community is involved when enforcement of a zoning law is at stake").

exposed to the same unreasonable risk to their health and safety as the out-of-state citizens. We conclude, therefore, that allowing persons who own land in another state to challenge the legality of a proposed project will protect the interests of a municipality and its citizens in uniform and harmonious development and in public health and safety, and will not solely benefit the persons who own land in another state at the expense of citizens of this state. In any event, even if we assume, in a particular case, that a person who does not own land in this state would be the primary beneficiary of an appeal pursuant to § 8-8 (b), we see no evidence that the legislature intended in this remedial statute that a municipality would be able to impose all of the burdens of a land use within the municipality on persons who own land in other states, with no recourse for those persons. See *Diamond Multimedia Systems, Inc.* v. *Superior Court*, supra, 19 Cal. 4th 1063 ("[l]egislature may reasonably conclude that California does have a legitimate interest in discouraging unlawful conduct that has a potential to harm California investors *as well as persons in other states*" [emphasis added]); cf. *Wellswood Columbia, LLC* v. *Hebron*, 295 Conn. 802, 822–23, 992 A.2d 1120 (2010) (town cannot unilaterally bind adjoining town to determination that second town's roads are adequate to handle traffic from proposed development in first town).[18] We conclude, there-

[18] The defendants point out that § 8-2 (a) expressly provides that the purpose of the statute is to "encourage the development of housing opportunities . . . for all *residents of the municipality* and the planning region in which the municipality is located . . . ." (Emphasis added.) We agree that zoning regulations are primarily for the benefit of the municipality that adopts them. We see no evidence, however, that the legislature intended that municipalities should be oblivious to the legitimate concerns of adjoining municipalities and their residents in making land use decisions. Cf. *Douglastown Civic Assn., Inc.* v. *Galvin*, 36 N.Y.2d 1, 7, 324 N.E.2d 317, 364 N.Y.S.2d 830 (1974) (A property owners' association that does not own land has standing to challenge a zoning decision because "[o]ur municipalities enact zoning ordinances in order to protect the public's health, welfare and safety. A challenge to a zoning variance focuses the court's attention on this public interest. To force a court to reject such a challenge on the grounds of

fore, that the phrase "any person" in § 8-8 (a) (1) includes persons who own land in another state.[19]

The defendants contend, however, that because persons who do not own land in this state are not subject to this state's land use regulations, and because persons who own land in this state cannot challenge land use decisions involving land located in New York, it would be unfair and unworkable to allow persons who do not own land in this state to appeal from a land use decision in this state pursuant to § 8-8 (b). In support of this claim, they point out that New York courts have held

standing when the group contesting the variance represents that segment of the public which stands to be most severely affected by it is, in our view, an ironic situation which should not be permitted to continue.").

[19] In support of their conclusions to the contrary, the trial court in each appeal relied heavily on the unreported decision of the trial court in *Prime America* v. *Planning & Zoning Commission*, Superior Court, judicial district of Stamford-Norwalk, Docket Nos. CV85-0076922S and CV85-0077162S (August 27, 1987), aff'd on other grounds sub nom. *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 558 A.2d 646 (1989). The trial court in that case concluded that, because § 8-8 (a) (1) confers standing to appeal on landowners who have not been classically aggrieved by a land use decision, "the policy reasons for recognizing out-of-state abutting landowners as aggrieved parties . . . are not particularly persuasive." Id. We disagree. In enacting the portion of § 8-8 (a) (1) that confers standing to appeal on persons who own land within 100 feet of the land involved in the decision, the primary intent of the legislature was not to grant standing to appeal to persons who are unaffected by land use decisions (although the statute may have had that incidental effect). Rather, the "legislature presumed as a matter of common knowledge that persons owning property within close proximity to a projected zoning action would be sufficiently affected by the decision of a zoning agency to be entitled to appeal that decision to court." *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 668–69, 560 A.2d 975 (1989). The intent of the legislature was merely to eliminate "the delay, difficulty and expense of *proving* classical aggrievement . . . ." (Emphasis added.) Id., 669. Moreover, even though there may be cases in which a person who is not affected by a land use decision will have statutory standing to appeal from the decision, that person cannot prevail in the appeal unless he or she establishes that the decision violated relevant statutes or regulations. Accordingly, we cannot presume that conferring standing to appeal on persons who do not own land in Connecticut will not advance the public policies that underlie the land use statutes, thereby benefiting citizens of this state.

that persons who do not own land in a New York municipality cannot appeal from the municipality's land use decisions. See *Huntington* v. *Oyster Bay*, 57 Misc. 2d 821, 822–23, 293 N.Y.S.2d 558 (1968) (by statute, town does not have automatic standing to challenge zoning regulations of adjoining town); *Wood* v. *Freeman*, 43 Misc. 2d 616, 618, 251 N.Y.S.2d 996 (1964) (persons who do not reside in municipality are not aggrieved by decisions of municipality's board of appeals), aff'd, 24 App. Div. 2d 704, 262 N.Y.S.2d 431 (1965); *Browning* v. *Bryant*, 178 Misc. 576, 576–77, 34 N.Y.S.2d 280 (nonresidents of village were not aggrieved by decision of village's board of trustees because "jurisdiction of the board of trustees of any village is confined to property and persons within the territorial limits of the village" and nonresidents "were not entitled to a notice of hearing and no interest of theirs could be the subject of adjudication by the board"), aff'd, 264 App. Div. 777, 34 N.Y.S.2d 729 (1942).[20] A fortiori, the defendants argue, persons who own land in this state would not have standing to challenge a land use decision of a New York municipality.

We are not persuaded. First, we conclude that the defendants read *Huntington* v. *Oyster Bay*, supra, 57 Misc. 2d 822, too broadly. In that case, a state statute provided that adjoining towns were entitled to notice of hearings concerning zoning regulations, but that they did not have the right to seek review of the regulations. The court held that the statute did not deprive adjoining municipalities of standing to challenge the approval of a special exception. Id., 823. Nevertheless, it concluded that the adjoining municipality lacked standing because it had not been prejudiced by the granting of the special exception. Id. Thus, *Huntington* does not stand for the broad proposition that adjoining towns, or their

---

[20] This clearly is not the law in Connecticut. See *Wellswood Columbia, LLC* v. *Hebron*, supra, 295 Conn. 822.

residents, lack standing to appeal from land use decisions.

Second, to the extent that *Wood* v. *Freeman*, supra, 43 Misc. 2d 618, and *Browning* v. *Bryant*, supra, 178 Misc. 576, support the general proposition that, because towns lack jurisdiction outside their territorial limits, nonresidents always lack standing to challenge their decisions, we disagree with them for the reasons previously set forth in this opinion. Indeed, as the plaintiffs point out, more recent New York cases have expressed a more expansive view of standing to challenge land use decisions. See *Sun-Brite Car Wash, Inc.* v. *Board of Zoning & Appeals*, 69 N.Y.2d 406, 413–15, 508 N.E.2d 130, 515 N.Y.S.2d 418 (1987) (because, "in zoning litigation in particular, it is desirable that land use disputes be resolved on their own merits rather than by preclusive, restrictive standing rules," and because "the welfare of the entire community is involved when enforcement of a zoning law is at stake," person who has suffered injury that is within zone of interests that regulation was designed to protect has standing to challenge zoning decision); *Douglaston Civic Assn., Inc.* v. *Galvin*, 36 N.Y.2d 1, 6, 324 N.E.2d 317, 364 N.Y.S.2d 830 (1974) ("We are troubled by the apparent readiness of our courts in zoning litigation to dispose of disputes over land use on questions of standing without reaching the merits, an attribute which is glaringly inconsistent with the broadening rules of standing in related fields. . . . [O]ur concern is heightened because of the particular need in zoning cases for a broader rule of standing." [Citations omitted.]); *Huntington* v. *Oyster Bay*, supra, 57 Misc. 2d 822 (adjoining municipality has standing to appeal from land use decision if it is classically aggrieved). Accordingly, we reject the defendants' claim and conclude that the trial court in each appeal improperly determined that the plaintiffs in the present case lacked standing to appeal from the commission's deci-

sions on the ground that they do not own land in this state.

## B

We next consider the defendants' claim that the trial court's decision in each appeal may be affirmed on the ground that the plaintiffs did not own property within 100 feet of the land involved in the commission's decisions granting the special permit and the amended special permit, as required to establish statutory standing under § 8-8 (a) (1).[21] Specifically, they contend that the plaintiffs are not statutorily aggrieved because the subdivision of the property was not stayed pending appeal; see General Statutes § 8-8 (h);[22] and because the plaintiffs do not own land within 100 feet of parcel B, on which the proposed church is to be built.[23] We disagree.

---

[21] The plaintiffs contend that this court should not consider the defendants' claimed alternate grounds for affirmance because, if this court determines that the judgment of the trial court in each appeal dismissing the claims of the plaintiffs who are parties to this appeal should be affirmed on the claimed alternate grounds, then the rulings of each trial court denying the defendants' motions to dismiss the claims of the Connecticut plaintiffs; see footnotes 10 and 11 of this opinion; must be reversed. Thus, the plaintiffs argue, the defendants will have effectively taken an interlocutory appeal from the trial courts' rulings with respect to the Connecticut plaintiffs, without the participation of those parties. We are not persuaded. Rather, we conclude that, just as this court may render a judgment in an appeal that has a dispositive effect on other pending appeals; see *State* v. *Hampton*, 293 Conn. 435, 457, 978 A.2d 1089 (2009) ("judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending" [internal quotation marks omitted]); this court may adjudicate the defendants' alternate grounds for affirmance, even though our judgment may affect the disposition of the claims of other parties to the underlying appeals.

[22] General Statutes § 8-8 (h) provides: "The appeal shall state the reason on which it has been predicated and shall not stay proceedings on the decision appealed from. However, the court to which the appeal is returnable may grant a restraining order, on application, and after notice to the board and cause shown."

[23] The defendants do not dispute that, if this court finds that the property must be treated as an undivided property during the pendency of these appeals, the "land involved" would not be the discrete portion of the property on which the proposed land use will take place, and the plaintiffs would

The following undisputed facts are relevant to our resolution of this claim. As we have indicated, Grace Property and Pacific Farm sought to subdivide the property into two parcels, parcel A and parcel B, and sought a special permit to construct a church on parcel B. Although the plaintiffs own land within a 100 foot radius of the undivided property, it is not disputed that none of the plaintiffs owns land within a 100 foot radius of any portion of parcel B.

"It is axiomatic that aggrievement is a basic requirement of standing, just as standing is a fundamental requirement of jurisdiction. If a party is found to lack [aggrievement], the court is without subject matter jurisdiction to determine the cause." (Internal quotation marks omitted.) *Soracco* v. *Williams Scotsman, Inc.*, 292 Conn. 86, 91, 971 A.2d 1 (2009). "Because a determination regarding the trial court's subject matter jurisdiction raises a question of law, our review is plenary." (Internal quotation marks omitted.) *Wilcox* v. *Webster Ins., Inc.*, 294 Conn. 206, 214, 982 A.2d 1053 (2009).

In support of their conclusions that the plaintiffs owned property within 100 feet of the land involved in the commission's decisions, the trial court in each appeal relied on General Statutes § 8-25 (a), which provides in relevant part: "Any plan for subdivision shall, upon approval . . . be filed or recorded by the applicant in the office of the town clerk not later than ninety days after the expiration of the appeal period under section 8-8, or in the case of an appeal, not later than ninety days after the termination of such appeal by dismissal, withdrawal or judgment in favor of the appli-

be aggrieved because they own land within 100 feet of the undivided property. See *Caltabiano* v. *Planning & Zoning Commission*, 211 Conn. 662, 663, 560 A.2d 975 (1989) ("the 'land involved' in . . . a [zoning] decision concerns the complete tract of land owned by the applicant rather than the discrete part of it containing the activity considered in the decision of the agency").

cant . . . ." The trial court in the first appeal concluded that, under this provision, subdivision approvals do not become final until any appeal is finally resolved *and* the subdivision plan is filed, and, therefore, the land in the present case remained undivided. In the second appeal, the trial court concluded that "the plan for subdivision cannot become final within the meaning of § 8-25 during the pendency of the appeal," but it did not indicate whether the subdivision would be effective as of the date that the appeal was terminated or the date that the subdivision plan was filed. Accordingly, both courts concluded that the "land involved" in the commission's decisions is the entire undivided property.

The defendants claim that these conclusions were incorrect because, under § 8-8, an appeal does not stay proceedings on the decision appealed from. Accordingly, they argue, the subdivision of the property was effective as of the date of approval and parcel B is currently a separate property.

We conclude that, when there has been an appeal from a subdivision approval, a subdivision becomes effective on the date that an appeal from the subdivision approval is terminated. In construing § 8-25 (a), we do not write on a blank slate. In *Fyber Properties Killingworth Ltd. Partnership* v. *Shanoff*, 228 Conn. 476, 481–83, 636 A.2d 834 (1994), this court concluded that, when there has been no appeal from a subdivision approval, the subdivision becomes effective as of the date that the subdivision was approved, not the date that the subdivision plan was filed.[24] In support of this

[24] In *Fyber Properties Killingworth Ltd. Partnership* v. *Shanoff*, supra, 228 Conn. 478, the plaintiff submitted a subdivision application to the Killingworth planning and zoning commission, which the commission approved. Thereafter, the plaintiff filed the subdivision map with the town clerk, as required by § 8-25. Id., 479. The defendant, the tax assessor for Killingworth, assessed the plaintiff's property as a completed subdivision as of October 1, 1989, which was after the date that the planning and zoning commission had approved the subdivision application, but before the date that the plaintiff had filed the subdivision map with the town clerk. Id. The plaintiff

conclusion, this court relied on the language of § 8-25 (a) and General Statutes § 8-26c.[25] Id., 482. Because, under § 8-25 (a), the time for filing the subdivision plan runs from the date of approval, which is the effective date of the subdivision, and, in the case of an appeal, the time for filing runs from the date that the appeal is terminated, it is reasonable to conclude that the date that the appeal is terminated is the effective date of the subdivision.

This interpretation is bolstered by our statement in *Fyber Properties Killingworth Ltd. Partnership* that, "[b]y amending . . . § 8-25 (a) in 1993 . . . the legislature intended to link the date of filing more closely to the date of approval." Id., 482 n.14. If the legislature had intended that, even in the case of an appeal, the subdivision would be effective as of the date of approval, it is reasonable to conclude that it would have required that the time for filing the subdivision would run from that date, not from the date that the appeal was terminated. Put another way, in light of its intent to link the date of filing more closely to the date of approval, i.e., the effective date of the subdivision, we find it highly unlikely that the legislature intended that, in the case of an appeal, the subdivision would be in effect on the date of approval, but there would be no

appealed from the assessment claiming that the subdivision had not been in effect as of the date of the assessment, and the trial court dismissed the appeal. Id., 479–80. On appeal, this court concluded that a subdivision becomes effective for purposes of municipal taxation on the date that the commission approves the subdivision, not the date that the subdivision map is filed with the town clerk. Id., 483. We expressly stated, however, that, "[i]n reaching this decision, we confine ourselves to the facts of this case. We do not decide the date upon which a property becomes taxable as a subdivision if the approval has been appealed . . . ." Id., 481.

[25] Although *Fyber Properties Killingworth Ltd. Partnership* relied on the 1991 revision of §§ 8-25 (a) and 8-26c, and although those statutes have been amended following our release of *Fyber Properties Killingworth Ltd. Partnership* in 1994, those amendments have no effect on the applicability of our analysis in that case.

subdivision plan on file for the indefinite period that the appeal is pending. Accordingly, we conclude that the subdivision approval in the present case will not be effective until these appeals terminate.

We recognize that this interpretation of § 8-25 (a) appears to be inconsistent with § 8-8 (h), which provides in relevant part that appeals pursuant to § 8-8 (b) "shall not stay proceedings on the decision appealed from. . . ." This court has held, however, that "[w]hen general and specific statutes conflict they should be harmoniously construed so the more specific statute controls." (Internal quotation marks omitted.) *Longley* v. *State Employees Retirement Commission*, 284 Conn. 149, 177, 931 A.2d 890 (2007). We must conclude, therefore, that § 8-25 (a), which specifically applies to subdivision approvals, trumps § 8-8 (h), which governs appeals from land use decisions generally. Accordingly, we conclude that the trial court in each appeal properly concluded that the plaintiffs are statutorily aggrieved because they own land within 100 feet of the undivided property.[26]

---

[26] The defendants contend, however, that, even if the subdivision was not effective as of the date of the approval, if the trial court in the first appeal ultimately dismisses the plaintiffs' appeal from the subdivision approval, the subdivision will then become effective and the plaintiffs will lack aggrievement in the second appeal from the approval of the amended special permit application. See *Primerica* v. *Planning & Zoning Commission*, 211 Conn. 85, 94, 558 A.2d 646 (1989) ("in order to retain standing as an aggrieved person, a party must have and must maintain a specific, personal and legal interest in the subject matter of the appeal throughout the course of the appeal"). We disagree. Because, under the specific circumstances of this case, the subdivision application and the amended special permit application were interdependent parts of the same transaction, we conclude that the trial court in the first appeal will not be able to determine the legality of the subdivision approval before the trial court in the second appeal determines the legality of the amended special permit approval. Rather, the decision of the trial court in the first appeal will be contingent on the trial court's determination in the second appeal, and vice versa. Cf. *Lord Family of Windsor, LLC* v. *Planning & Zoning Commission*, 288 Conn. 730, 737, 954 A.2d 831 (2008) ("[I]n considering a subdivision application in its planning capacity, the commission is required to enforce applicable zoning regulations

## II

## CLAIM RELATING SOLELY TO DOCKET NO. SC 18418

We next address the plaintiffs' claim that the trial court in the second appeal, Docket No. SC 18418, improperly determined that they were collaterally estopped from relitigating the issue of statutory aggrievement because that issue had been fully and finally litigated in the first appeal. We conclude that we need not determine whether the doctrine of collateral estoppel[27] applied in the second appeal, because, even if we assume that the trial court in that appeal was bound by the determination of the trial court in the first appeal, our conclusion that the trial court in the first appeal improperly concluded that the plaintiffs were not statutorily aggrieved also applies to the second appeal.[28] See *State* v. *Hampton*, 293 Conn. 435, 457, 978

. . . . Thus, the commission is required to assume that a landowner who seeks a subdivision approval will use the subdivided property for the permitted purpose." [Citation omitted.]). In other words, if the trial court in the second appeal determines that the proposed use violates the zoning regulations, Grace Property and Grace Farms may decide that there is no reason to subdivide the property, and the first appeal may be rendered moot. Conversely, if the trial court in the first appeal determines that the subdivision violates the subdivision regulations, the second appeal will be rendered moot, because the parcel on which the proposed church is to be constructed will not exist. Because the first and second appeals are inextricably intertwined, consolidation of the appeals may be appropriate on remand.

[27] "The common-law doctrine of collateral estoppel, or issue preclusion, embodies a judicial policy in favor of judicial economy, the stability of former judgments and finality. . . . Collateral estoppel, or issue preclusion, is that aspect of res judicata which prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action between the same parties upon a different claim. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action." (Internal quotation marks omitted.) *Lyon* v. *Jones*, 291 Conn. 384, 406, 968 A.2d 416 (2009).

[28] Cf. *Pagano* v. *Board of Education*, 4 Conn. App. 1, 10, 492 A.2d 197 ("Although the administrative appeal case before Judge Kline was a separate case with a separate docket number from that before Judge Healey, functionally the second appeal was a continued, second phase of the first. Under these circumstances, the doctrine of law of the case, rather than collateral

A.2d 1089 (2009) ("judgments that are not by their terms limited to prospective application are presumed to apply retroactively . . . to cases that are pending" [internal quotation marks omitted]).

## III

## CLAIM RELATING SOLELY TO DOCKET NO. SC 18333

We next address the defendants' claim that the trial court's decision in the first appeal, Docket No. SC 18333, may be affirmed on the alternate ground that the plaintiffs failed to serve two copies of process on the town clerk as required by §§ 8-8 (f) (2) and 52-57 (b) (5). We conclude that the trial court properly determined that the plaintiffs' failure to serve two copies of process on the town clerk did not deprive it of subject matter jurisdiction.

The following undisputed facts are relevant to this claim. The marshal's return of service states that he left a "true and attested copy of the WRIT, SUMMONS AND COMPLAINT with my doings thereon endorsed. In the hands of: Claudia A. Weber Town Clerk . . . its Register[ed] Agent for Service for [the commission]." The defendants attached to their motion to dismiss an affidavit by Weber in which she stated that the marshal served her office with only one copy of the summons and complaint.

---

estoppel or res judicata, comes into play."), cert. denied, 197 Conn. 809, 499 A.2d 60 (1985). In addition, this court has held that it "will not apply collateral estoppel, where it would otherwise be applicable, if the party who was unsuccessful in the initial action is barred, as a matter of law, from obtaining appellate review of the initial action." *Commissioner of Motor Vehicles* v. *DeMilo & Co.*, 233 Conn. 254, 268, 659 A.2d 148 (1995). Because the plaintiffs in the present case were not able to obtain appellate review of the decision of the trial court in the first appeal before the trial court in the second appeal rendered its decision, it is arguable that the doctrine of collateral estoppel could not have applied.

This court has held that "failure to comply with the statutory requirements for service of legal process on a zoning board in a zoning appeal will deprive the court of subject matter jurisdiction." *Vitale* v. *Zoning Board of Appeals*, 279 Conn. 672, 678, 904 A.2d 182 (2006); *Fedus* v. *Planning & Zoning Commission*, 278 Conn. 751, 770 n.17, 900 A.2d 1 (2006) ("it is evident, albeit by implication, that the failure to make timely service on the board does deprive the court of subject matter jurisdiction over the appeal"). "We have long held that because [a] determination regarding a trial court's subject matter jurisdiction is a question of law, our review is plenary." (Internal quotation marks omitted.) *Vitale* v. *Zoning Board of Appeals*, supra, 678.

We begin our analysis with the language of the relevant statutes. Section 8-8 (f) (2) provides: "For any appeal taken on or after October 1, 2004, process shall be served in accordance with subdivision (5) of subsection (b) of section 52-57. Such service shall be for the purpose of providing legal notice of the appeal to the board and shall not thereby make the clerk of the municipality or the chairman or clerk of the board a necessary party to the appeal." Section 52-57 (b) provides in relevant part: "Process in civil actions against the following-described classes of defendants shall be served as follows . . . (5) against a board, commission, department or agency of a town, city or borough, notwithstanding any provision of law, upon the clerk of the town, city or borough, provided two copies of such process shall be served upon the clerk and the clerk shall retain one copy and forward the second copy to the board, commission, department or agency . . . ."

In support of their claim that the requirement that a person bringing an appeal pursuant to § 8-8 (b) must serve two copies of process on the town clerk is subject matter jurisdictional, the defendants rely on this court's decision in *Vitale* v. *Zoning Board of Appeals*, supra,

279 Conn. 672. In that case, the plaintiffs appealed from a decision of the defendant, the zoning board of appeals of the town of Montville. Id., 674. The service of legal process for the appeal was governed by General Statutes (Rev. to 2003) § 8-8 (f), which required that a person appealing from the decision of a zoning board serve process "by leaving a true and attested copy of the process with, or at the usual place of abode of, the chairman or clerk of the board, and . . . the clerk of the municipality." (Internal quotation marks omitted.) Id., 679. The plaintiffs had directed the marshal to serve legal process upon both the chairman or clerk of the zoning board of appeals and the Montville town clerk but, instead, the marshal left two copies of the appeal papers with the town clerk. Id., 675. This court concluded that the failure to serve process on the chairman or clerk of the zoning board of appeals deprived the trial court of subject matter jurisdiction over the appeal. Id., 680; *Primus* v. *Planning & Zoning Commission,* 101 Conn. App. 209, 211, 921 A.2d 662 (2007) (per curiam) (same); see also *R.C. Equity Group, LLC* v. *Zoning Commission,* supra, 285 Conn. 252 (when marshal served process on chairman of zoning commission, but not on borough clerk as required by § 8-8 [f] [2], trial court lacked jurisdiction over appeal).

We disagree with the defendants that this court's decisions in *Vitale* and *R.C. Equity Group, LLC,* require the dismissal of the present appeals. In *R.C. Equity Group, LLC,* supra, 285 Conn. 251 n.15, this court stated that under *Fedus,* "a failure to name [a] town clerk in the citation of a zoning appeal does not deprive the court of subject matter jurisdiction over the appeal when . . . actual service nevertheless is made on the proper person. When actual service is made, any defect in the *form* of the citation or summons may be corrected

pursuant to § 8-8 (p)."[29] (Emphasis in original.) See also *Fedus* v. *Planning & Zoning Commission,* supra, 278 Conn. 771 n.17 (when plaintiffs failed to name town clerk in citation, but marshal nevertheless served clerk as required by General Statutes [Rev. to 2001] § 8-8 [f], as amended by No. 01-47, § 1, of the 2001 Public Acts, there was no jurisdictional defect because "only a total failure to serve the board, and not lesser defects, deprives the court of jurisdiction over the appeal"); id., 776 n.21 ("technical deficiencies in the appeal do not deprive the court of subject matter jurisdiction").

In the present case, the marshal served one copy of process on the town clerk. Under § 8-8 (f) (2), service on the town clerk constitutes legal notice to the commission.[30] See General Statutes § 8-8 (f) (2) (service on town clerk is "for the purpose of providing legal notice of the appeal to the board"). We conclude, therefore, that there was not a "total failure" to serve the commis-

[29] General Statutes § 8-8 (p) provides: "The right of a person to appeal a decision of a board to the Superior Court and the procedure prescribed in this section shall be liberally interpreted in any case where a strict adherence to these provisions would work surprise or injustice. The appeal shall be considered to be a civil action and, except as otherwise required by this section or the rules of the Superior Court, pleadings may be filed, amended or corrected, and parties may be summoned, substituted or otherwise joined, as provided by the general statutes."

[30] Grace Property and Pacific Farm suggest that, because the town itself is a proper party to a zoning appeal, service of a single copy of process on the town clerk must be construed to be service on the town, and not the commission. We disagree. Although the town may be a proper party to a zoning appeal, it is not a *necessary* party. See General Statutes § 8-8 (f) (2) ("service shall be for the purpose of providing legal notice of the appeal to the board and *shall not thereby make the clerk of the municipality or the chairman or clerk of the board a necessary party to the appeal*" [emphasis added]); see also *Fedus* v. *Planning & Zoning Commission,* supra, 278 Conn. 763 ("service of the appeal on the town clerk is not for the purpose of making the town clerk a necessary party to the appeal but, rather, to provide the board with additional notice of the appeal"). Indeed, the town was not a party to this appeal. Accordingly, service of process on the town clerk could only have been for the purpose of providing notice of the appeal to the commission.

sion. *Fedus* v. *Planning & Zoning Commission*, supra, 278 Conn. 771 n.17. Rather, the failure to file two copies of process on the town clerk merely constituted a formal defect that could be corrected pursuant to § 8-8 (p). See *R.C. Equity Group, LLC* v. *Zoning Commission*, supra, 285 Conn. 251 n.15. Accordingly, we conclude that the plaintiffs' failure to serve two copies of process on the town clerk did not deprive the trial court of subject matter jurisdiction.

The judgments in Docket No. SC 18333 and Docket No. SC 18418 are reversed and the cases are remanded to the trial court for further proceedings.

In this opinion the other justices concurred.

---

* The listing of justices reflects their seniority status on this court as of the date of oral argument.